21718\ch
Coverage Library 3804.1

United States District Court
Southern District of Texas
FILED

JAN 1 4 2000

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ESSEX INSURANCE COMPANY, | § | |
| | § | |
| **Plaintiff,** | § | **B - 0 0 - 0 1 1** |
| | § | |
| VS. | § | CIVIL ACTION NO. _____ |
| | § | |
| BURNELL MARINE & SUPPLY, INC.; | § | |
| CHARLES R. BURNELL, Individually | § | |
| and d/b/a BURNELL ENTERPRISES; | § | |
| and CHARLES B. BURNELL, | § | |
| Individually and d/b/a BURNELL | § | |
| ENTERPRISES. | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY RELIEF

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW **ESSEX INSURANCE COMPANY**, Plaintiff in the above-styled and numbered cause, and petitions this Court pursuant to the Federal Declaratory Judgment Act and Rule 57 of the Federal Rules of Civil Procedure, for consideration of a commercial general liability insurance policy and a declaration that Plaintiff has no duty to defend or indemnify the above-referenced Defendants in a state court action presently pending against them. In support of this Complaint, Plaintiff respectfully shows the Court as follows:

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY RELIEF**      **PAGE 1**

## I.

## <u>PARTIES</u>

1.     Plaintiff **ESSEX INSURANCE COMPANY** ("**ESSEX**") is a surplus lines insurance company incorporated under the laws of the State of Delaware, having its principal place of business in the State of Virginia.

2.     Defendant **BURNELL MARINE & SUPPLY, INC.** is a Texas corporation with its principal place of business in Brownsville, Cameron County, Texas.  **BURNELL** may be served with process by serving its registered agent for service, Charles Burnell, at its registered office, Star Route Box 58, Brownsville, Texas 78521.

3.     Defendant **CHARLES R. BURNELL, Individually and d/b/a BURNELL ENTERPRISES**, is an individual residing and doing business within the State of Texas. **CHARLES R. BURNELL** may be personally served with process at Star Route Box 58, Brownsville, Texas 78521.

4.     Defendant **CHARLES B. BURNELL, Individually and d/b/a BURNELL ENTERPRISES** is an individual residing and doing business within the State of Texas. **CHARLES B. BURNELL** may be personally served with process at Star Route Box 58, Brownsville, Texas 78521.

## II.

## <u>JURISDICTION AND VENUE</u>

5.     This Declaratory Judgment Action is brought under 28 U.S.C. §2201 *et seq.* and Rule 57 of the Federal Rules of Civil Procedure, for the purpose of determining a question of actual controversy between the parties, as hereinafter more fully set forth.  The jurisdiction of this Court

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY RELIEF**                    **PAGE 2**

is based upon the diversity of Plaintiff and Defendant, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

6.    Venue is properly maintained in this Court because it is the judicial district where a substantial part of the events and omissions giving rise to the claim occurred, and in which the all of the Defendants reside and/or maintain their principal place of business.

## III.

## THE UNDERLYING LAWSUIT

7.    Defendants are also defendants in an underlying state court action styled *Ramon Guzman v. Charles B. Burnell, Individually and d/b/a Burnell Enterprises; Charles R. Burnell, Individually and d/b/a Burnell Enterprises; Burnell Marine & Supply, Inc.; and Swamp Irish, Inc.*; Cause No. 99-04-01950-E, currently pending in the 357th Judicial District Court of Cameron County, Texas ("Underlying Lawsuit").  A true and correct copy of Plaintiff's Third Amended Petition in the Underlying Lawsuit, the latest filed petition known to **ESSEX**, is attached hereto and incorporated herein by reference as Exhibit "A" for all purposes.  The Underlying Lawsuit is for personal injury damages Ramon Guzman claims to have incurred while employed by Defendant **BURNELL MARINE & SUPPLY, INC.** as a "temporary day laborer" shoveling cement into buckets for dumping into the hull of a shrimp boat owned by Swamp Irish, Inc.  *See* Ex. A, ¶IV.

8.    Specifically, Guzman claims to have been splattered with cement while performing the subject "bilging" operations, resulting in the ultimate loss of his right eye.  *See* Ex. A, ¶IV. Guzman claims that his injuries were a direct and proximate result of Defendants' individual and/or collective negligence in failing to supply him with appropriate protective gear; warn him of the potential dangers associated with his work; properly hire, train or supervise Defendants' employees

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY RELIEF**                    **PAGE 3**

with regard to such operations; and/or provide him with medical treatment. *See* Ex. A, ¶¶IV-V.

## IV.

### THE INSURANCE POLICY

9.      At all relevant times to this action, Defendant **BURNELL MARINE & SUPPLY, INC.** was the Named Insured under a Commercial General Liability Insurance Policy issued by Plaintiff **ESSEX**, numbered 3CA 8694, effective March 13, 1998 through March 13, 1999 ("Policy"). A true and correct copy of the Policy is attached hereto and incorporated herein by reference as Exhibit "B" for all purposes.

10.      Among other things, the Policy obligates **ESSEX** to defend and indemnify its "insureds" from damages it must legally pay because of "bodily injury" or "property damage" caused by an "occurrence" to which the insurance otherwise applies.

## V.

### DEFENDANT'S DEMANDS

11.      Defendants maintain that they are entitled to coverage under the Policy for all or part of the claims asserted against them in the underlying state court action.

12.      **ESSEX** has discussed the coverage issues with Defendants and, based on the Policy provisions set forth above, denied that it owes them any coverage for the claims presently asserted against them in the Underlying Lawsuit.

## VI.

### BASIS FOR DECLARATORY RELIEF

13.      Applying the Policy's plain and unambiguous terms and provisions to the allegations asserted against Defendants in the Underlying Lawsuit, Plaintiff **ESSEX** is clearly entitled to a

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY RELIEF**                    **PAGE 4**

declaration Defendants are not entitled to the "bodily injury" and/or "property damage" liability coverage they demand under the Policy.

14. **"Bodily Injury and Property Damage Liability" Coverage.** As previously noted, the Policy is a Commercial General Liability Insurance Policy which provides the following "Bodily Injury and Property Damage Liability" Coverage. *See* Exhibit "B." Clearly, Guzman's suit against Defendants is for physical injuries as a result of Defendants' alleged negligence (i.e. "bodily injury"). However, the nature of such claims preclude any coverage for same under the Policy's express terms and provisions of coverage.

15. **"Who Is An Insured".** First, with regard to Defendants' status as "insureds" under the Policy, Section II of the Policy provides the following, in relevant part:

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as:

                    *   *   *

    c. An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insured, but only with respect to their liability as stockholders.

2. Each of the following are also an insured:

    a. Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

      (1) "Bodily injury" or "property damage":

        a. To you, to your

> partners or members...
> or to a co-"employee"
> while in the course of
> his or her employment
> or while performing
> duties related to the
> conduct of your
> business. . . .

*See* Ex. B, Section II - Who Is An Insured.  *See* Ex. B, Section V - Definitions.  Therefore, to the

extent Guzman's suit against Defendants is for any act or omission by any entity or on behalf of an

entity other than the Named Insured (i.e. **BURNELL MARINE & SUPPLY, INC.**), coverage does

not exist under the Policy.

16.    **"Employer's Liability" Exclusion.**  Coverage is also precluded under the Policy for

Guzman's claims against Defendants in the Underlying Lawsuit based on his employment for

BURNELL MARINE & SUPPLY, INC. as a "temporary day laborer."  Specifically, the Policy

contains an attached Mandatory Endorsement, entitled "Combination Endorsement M/E-001,

precluding any coverage for the following:

*   *   *

5.    **EMPLOYER'S   LIABILITY   EXCLUSION
AMENDED:**
Employer's   Liability   under   2.e.   Exclusions,
Commercial   General   Liability   Coverage   Form,
Section I.-Coverage, is replaced by the following and
applies throughout this policy:

*This insurance does not apply to any claim, suit, cost
or expense arising out of "bodily injury" to*

*(1)     any employee of the Named Insured
arising out of and in the course of
employment by an Insured, or while
performing   duties   related   to   the*

> *conduct of the Insured's business,....*
>
> This exclusion applies whether an Insured may be liable as an employer or in any other capacity, and/or to any obligation to share damages because of the injury, as well as liability assumed under any "Insured Contract."
>
> Wherever the word employee appears above, it shall also mean any member, associate, *leased worker*, temporary worker of, or any person or persons loaned to or volunteering services to you. This exclusion applies to the entire policy, and where there is no coverage there is no duty to defend.
>
> \* \* \*

*See* Ex. B, Combination Endorsement M/E-001 [italics supplied].

17. **"Hiring and/or Supervision" Exclusion.** Coverage for Guzman's claims in the Underlying Lawsuit is further precluded under the Mandatory Endorsement's "Hiring and/or Supervision" Exclusion providing that the insurance does not apply to "any claim, suit, cost or expense arising out of" the following

> \* \* \*
>
> E.    **HIRING AND/OR SUPERVISION:**
>       Charges or allegations of negligent hiring, training, placement or supervision.
>
> \* \* \*

*See* Ex. B, Combination Endorsement M/E-001.

18. **"Aircraft, 'Auto' or Watercraft" Exclusion.** Also significant to the present coverage dispute is the Policy's "Aircraft, 'Auto' or Watercraft" Exclusion which precludes coverage for the following:

> \* \* \*

g.    **Aircraft, "Auto" or Watercraft.**
"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operations and "loading or unloading."

This exclusion does not apply to:

(1)    A watercraft while ashore on premises *you* own or rent;

(2)    A watercraft *you* do not own that is:

    (a)    Less than 26 feet long; and

    (b)    Not being used to carry persons or property for a charge.

\*   \*   \*

*See* Exhibit "B."

19.    **Classification Limitation.** The Policy lists a business description of "repair of owned nets and boats" on the declaration page. However, the boat being repaired at the time of the underlying claim was owned by Swamp Irish, Inc.

20.    **"Punitive and/or Exemplary Damages" Exclusion**. Finally, to the extent Guzman seeks the recovery of any punitive and/or exemplary damages by his suit against Defendants, coverage will not exist under the following exclusionary provision:

\*   \*   \*

C.    **PUNITIVE OR EXEMPLARY DAMAGES**
Punitive or Exemplary Damages whether arising out of the acts of any insured, any employee of any

insured or any other person.

\*    \*    \*

*See* Ex. B, Combination Endorsement M/E-001.

## VII.

## <u>JUSTICIABLE INTEREST</u>

21.     If Defendants continue to demand that Plaintiff ESSEX furnish a defense to it in the Underlying Lawsuit and to pay a settlement effected or judgment entered against them herein, Plaintiff will be put to substantial expenses. If, on the other hand, Plaintiff unequivocally refuses to defend Defendants in the Underlying Lawsuit before its duty to do so has been adjudicated by this Court, ESSEX will be faced with the hazard of subsequently being held to have breached the subject policy of insurance, and the possibility that the Underlying Lawsuit will be insufficiently defended, or not at all.

## VIII.

## <u>ACTUAL CONTROVERSY</u>

22.     Therefore, an actual controversy exists between the parties hereto within the meaning of 28 U.S.C. §2201 *et seq.*, and this Court is vested with the power in the instant case to declare and adjudicate the rights and other legal relationships of the parties to this action with reference to issues raised by this Complaint.

## IX.

## <u>ATTORNEY'S FEES</u>

23.     Plaintiff **ESSEX** has been required to retain the undersigned law firm to represent it in and to prosecute this Declaratory Judgment Action. Plaintiff seeks reimbursement of its

reasonable and necessary attorney's fees pursuant to law.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff **ESSEX INSURANCE COMPANY** prays for judgment as follows:

1.      That the Court adjudicate and declare that the Policy does not furnish insurance coverage to Defendants for the claims asserted against them in the Underlying Lawsuit;

2.      That the Court adjudicate and declare that Plaintiff is not required to defend and/or indemnify Defendants in the Underlying Lawsuit under the Policy;

3.      That Plaintiff have judgment against Defendants for Plaintiff's costs of court and expenses, including reasonable attorney's fees; and

4.      That Plaintiff be awarded such other and further relief, legal or equitable, general or specific, to which it may show itself to be justly entitled.

Respectfully submitted,

**FANNING, HARPER & MARTINSON, P.C.**
A Professional Corporation

By: _____

**STEVEN R. SHATTUCK**
State Bar No. 18133700
**LESLIE ECHOLS PITTS**
State Bar No. 00784007
300 Preston Commons West
8117 Preston Road
Dallas, Texas 75225
(214) 369-1300  (office)
(214) 987-9649  (telecopier)
**ATTORNEYS FOR PLAINTIFF**
**ESSEX INSURANCE COMPANY**

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY RELIEF**                    **PAGE 10**

Case 1:00-cv-00011   Document 1   Filed in TXSD on 01/14/2000   Page 11 of 42

Cause No.: <u>99-04-01950-E</u>

FILED ___ O'CLOCK
AURORA DE LA GARZA DIST CLERK
AUG 24 1999
JANIE WOLFE

| | | |
|---|---|---|
| RAMON GUZMAN, | § | IN THE JUDICIAL DISTRICT |
| *Plaintiff* | § | |
| | § | |
| VS. | § | CAMERON, COUNTY, TEXAS |
| | § | |
| | § | |
| CHARLES B. BURNELL, | § | |
| INDIVIDUALLY AND D/B/A | § | |
| BURNELL ENTERPRISES; | § | |
| CHARLES R. BURNELL, | § | |
| INDIVIDUALLY AND D/B/A | § | |
| BURNELL ENTERPRISES; | § | |
| BURNELL MARINE & SUPPLY, | § | |
| INC.; SWAMP IRISH, INC.; | § | |
| *Defendants* | § | 357th DISTRICT COURT |

<u>PLAINTIFF'S THIRD AMENDED PETITION</u>

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Plaintiff RAMON GUZMAN, Individually, (hereinafter referred to herein for all purposes collectively as "Plaintiff"), complaining of Defendants CHARLES B. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES; CHARLES R. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES; BURNELL MARINE & SUPPLY, INC.; SWAMP IRISH, INC.; (hereinafter referred to herein for all purposes collectively as "Defendants") and for cause of action would respectfully show the Court the following:

I.

DISCOVERY CONTROL PLAN

This matter shall be governed by Level 2 of the Discovery Control Plan in accordance with Rule 190 of the Texas Rules of Civil Procedure.

II.

PARTIES

a. Plaintiff **RAMON GUZMAN** is a resident of Brownsville, Cameron County, Texas.

EXHIBIT "A"

b.  Defendant CHARLES B. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES may be served with citation at HC 70, Box 58, Brownsville, Texas 78521. Service of citation will be issued by a private processor, pursuant to Rules 103 and 106(3)(a) of the Texas Rules of Civil Procedure.

c.  Defendant CHARLES R. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES may be served with citation at HC 70, Box 58, Brownsville, Texas 78521. Service of citation will be issued by a private processor, pursuant to Rules 103 and 106(3)(a) of the Texas Rules of Civil Procedure.

d.  Defendant BURNELL MARINE & SUPPLY, INC. is a Texas Corporation duly formed and existing under the laws of the State of Texas and may be served with citation by serving its Registered Agent, Mr. Charles Burnell at HC 70, Box 58, Brownsville, Texas 78521. Service of citation will be issued by a private processor, pursuant to Rules 103 and 106(3)(a) of the Texas Rules of Civil Procedure.

e.  Defendant SWAMP IRISH, INC., is a Texas Corporation duly formed and existing under the laws of the State of Texas and has already been served with citation by serving its Registered Agent, Mr. Robert J. Hymer at Starr Route Box 5, Brownsville, Texas 78520. Service of citation is not necessary on this Defendant by Certified Mail, Return Receipt Request, pursuant to Rule 106(3)(a) of the Texas Rules of Civil Procedure.

### III.
### JURISDICTION AND VENUE

1.  · This Court has jurisdiction of this matter in that the amount in controversy is within the jurisdictional requirements of this Court, and all parties are subject to this Court's jurisdiction by reason of their residence in Cameron County, Texas.

2.  Venue of this proceeding is proper in Cameron County, Texas pursuant to Texas Civil Practice and Remedies Code Sections 15.002 and 15.005. All or a substantial part of the events and/or omissions giving rise to the claims herein occurred in Cameron County. Furthermore, Plaintiff was a resident of Cameron County, Texas at the time the cause of action accrued. Defendants also reside and do business in Cameron County, Texas.

---

PLAINTIFF'S THIRD AMENDED PETITION, Page -2

## IV.

## FACTS

3.     On or about April 22, 1998, Plaintiff Ramon Guzman was hired by Burnell Marine and Supply, Inc., at the Brownsville Shrimp Turning Basin in Cameron County, Texas to perform cement work.  The Plaintiff more specifically was  hired by Defendant Charles R. Burnell on behalf of his father Charles B. Burnell as a temporary day laborer.  He was hired along with many other men to shovel cement into 5 gallon buckets and dump these buckets into the hull of a shrimp boat, named the "Success", which is owned by Charles B. Burnell, who is president of a  Texas Corporation, Swamp Irish, Inc., which owns this shrimp boat.  The purpose of this cement was to act as ballast for the boat.

4.     As the Plaintiff was shovelling the cement into buckets, some of the cement splattered into his right eye causing him great pain, anguish, total loss of vision in his right eye and subsequent loss of his right eye which has been replaced with a glass eye.

5.     At the time of the incident in question, the Plaintiff complained of pain to Defendant CHARLES R. BURNELL, his immediate supervisor on board the shrimp boat but no assistance or offer of medical care was provided.

6.     The incident in question, and the damages and injuries for  which  this lawsuit is maintained by  Plaintiff,  was  proximately  caused by the Defendant's failure to provide protective gear, failure to warn and make aware  the plaintiff of the dangerous condition and acid like additives in the cement, and failure to train the plaintiff  on the part of the Defendants named herein.  Plaintiff contends that nothing  he  did or failed to do caused or in any way contributed to his injuries and damages on the occasion in question.

## V.

## DEFENDANTS' NEGLIGENCE

7.     Plaintiff contends that on the occasion in question, Defendants acting by and through their agents, servants, employees or representatives, who were at all times acting in the course and scope of their employment, were guilty of negligence toward the Plaintiff in the following respects:

a.   The Defendants were negligent by their own actions increasing the risk of injury to the Plaintiff by failure to provide adequate protective eye lens;

b.   The Defendants were negligent by their own actions increasing the risk of injury to the Plaintiff by failure to warn the Plaintiff of the dangerous substances and/or hazardous chemicals in the cement;

Other further actions and/or acts and/or conducts which amounted to negligence which were engaged in by said Defendants on the occasion in question consisted of the named Defendants failing to:

a.   Hire competent managers and/or supervisors;

b.   In failing to act like a reasonably prudent employer, owner, manager, or supervisor would have acted under the same or similar circumstances.

c.   In failing to provide medical attention to the Plaintiff like a reasonably prudent employer would have done in the same or similar circumstances.

d.   In failing to properly train the plaintiff in the handling of cement which unlike its normal application the cement used on the manner intended by defendants requires the addition of chemicals to promote quick hardening of the cement which said chemicals in combination with cement is extremely dangerous to humans particularly if ingested or splattered in the eyes.

## VI.

## RECOVERY SOUGHT BY PLAINTIFF

Plaintiff would show the Court that by reason of each and all of the foregoing acts and omissions of Defendants, he sustained injuries and damages for which he seeks recovery from Defendants, in an amount in excess of the minimum jurisdictional limits of the Court.

Plaintiff seeks recovery for the following:

a.   Damages for Plaintiff's past and present physical pain and suffering;

b.   Damages for physical pain and suffering which in all reasonable probability Plaintiff will experience in the future;

c.   Damages for Plaintiff's past and present mental anguish;

d.  Damages for mental anguish which in all reasonable probability Plaintiff will incur in the future;

e.  Damages for reasonable and necessary medical expenses which Plaintiff has incurred in the past and will incur up to the time of trial;

f.  Damages for medical expenses which in all reasonable probability Plaintiff will incur in the future;

g.  Damages for painful and permanent injury and disability as well as interference in the many activities that depend on vision with consequent loss of employment opportunities;

h.  Damages for future diminished earning power or capacity which in all reasonable probability Plaintiff will suffer in the future;

i.  Damages for harm from loss of sleep;

j.  Damages for past and future impairment of ability to enjoy life;

k.  Damages for humiliation and embarrassment due to the disfiguring eye;

l.  Damages for anxiety and inconvenience resulting from surgical procedures which have left a disfigured eye.

## VII.
## EXEMPLARY DAMAGES

In doing all the acts herein alleged, Defendants acted wantonly and with malice toward Plaintiff. As a result of such acts of conscious indifference and heedless disregard for the rights, welfare and safety of the Plaintiff. Plaintiff is entitled to an award of exemplary damages as may be determined by the trier of fact and for which he now sues.

## VIII.
## ATTORNEYS' FEES

By reason of the foregoing, Plaintiff has been compelled to engage the services of the undersigned attorney and has obligated himself to pay reasonable and necessary attorney's fees. For such attorney's fees, Plaintiff is entitled to reimbursement for which he sues.

---

PLAINTIFF'S THIRD AMENDED PETITION, Page -5

## IX.
## JURY DEMAND

Plaintiff hereby makes a request for a jury trial in this cause pursuant to Rule 216 of the Texas Rules of Civil Procedure and has deposited with the District Clerk of Cameron County, Texas the requisite jury fee of ($22.00) DOLLARS.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that on trial hereof Plaintiff have:

1.  Judgment against Defendants, jointly and severally, for a sum in excess of the minimum jurisdictional limits of the Court;

2.  Pre-judgment interest as provided by law, at the highest rate until the time of trial;

3.  Exemplary damages as may be found by the trier of fact, together with post-judgment interest at the highest legal rate as provided by law, until paid;

4.  Interest on the judgment at the highest legal rate as provided by law until paid;

5.  Attorney's fees;

6.  Costs of suit;

7.  Such other and further relief both in law and in equity to which Plaintiffs may be justly entitled.

Respectfully submitted,

LAW OFFICE OF RAMON GARCIA, P.C.
222 West University
Edinburg, Texas 78539
(956) 383-7441
(956) 381-0825 (Fax)

By: _____

FELIPE GARCIA, JR.
STATE BAR NO: 07633000
ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I, FELIPE GARCIA, JR., do hereby certify that on the _24th_ day of August , 1999, a true and correct copy of the above and foregoing PLAINTIFF'S THIRD AMENDED PETITION was sent by Certified Mail, Return Receipt Requested to:

Hon. Patrick Russell
Russell and Allegria
37 W. Elizabeth St.
Brownsville, Texas 78520


_____
FELIPE GARCIA, JR.



ESSEX
INSURANCE
MARKEL COMPANY

INSURANCE

POLICY

EXHIBIT

"B"

In consideration of the payment of           nium, in reliance upon the statements ma           Company by application and subject to the terms set forth herein, the Company designated on the Declarations page (A Capital Stock Company), herein called the Company, AGREES with the Insured:

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed proof of mailing will be sufficient pro-of of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:
1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.
Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.
And we do not warrant that conditions:
1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards. This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.
3. Premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

## F. PREMIUMS, MINIMUM, DEPOSIT AND AUDIT

All references in this policy to minimum and/or deposit premiums and premium audits is replaced by the following, as respects casualty:
Premium shown as advance premium is both a deposit premium and a minimum premium for the policy term. At the close of each audit period we will compute earned premium for that period. If earned is more than advance premium then the amount by which it exceeds advance premium is due and payable on notice to you. If earned is less, advance premium applies as the minimum premium with no return payable to you.

If this policy is cancelled the pro rata or short rate of the minimum and deposit premium will apply for the policy term, subject to an absolute minimum earned premium of 25% of the total advance premium, unless final audit develops greater than said 25%. If your business is a seasonal business, however, the minimum premium then becomes fully earned at the end of your season.

## G. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

011-1054 (Rev. 12-96)                              1 of 3                                    *continued ...*

CSitPDF - www.fastio.com

This Policy is nc    unless a Declarations Page and Cove    m is attached.

## NUCLEAR ENERGY LIABILITY EXCLUSION

**1. The insurance does not apply:**

**A.** Under any Liability Coverage, to "bodily injury" or "property damage:"

  **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

  **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses Incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

  **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

  **(2)** The "nuclear material" is contained in "spent fuel" or "waste " at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

  **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, Parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

**2. As used in this endorsement**

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "Special nuclear material" or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:
**(a)** Any "nuclear reactor;"
**(b)** Any building, premises or property owned, leased, loaned or used by or on behalf of the insured where 'hazardous properties', 'nuclear material' or radioactive material is used, processed or stored or has been discharged or dispersed therefrom;
**(c)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel," or **(3)** handling, processing or packaging "waste;"
**(d)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
**(e)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;" and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

# SERVICE OF SUIT

It is agreed that in the event of the failure of this Company herein to pay any amount claimed to be due hereunder, this Company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the Company's President, or his nominee, at 4551 Cox Road, Glen Allen, VA 23060-4901 and that in any suit instituted against any one of them upon this Policy, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any state, territory or district of the United States of America, which makes provision therefor, this Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

*Secretary*                                   *President*

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright. Insurance Services Office, Inc 1982, 1983



# ESSEX INSURANCE COMPANY

**MARKEL**



## COMMERCIAL LIABILITY DECLARATIONS

3CA 8615
_____
Renewal of Number

**Policy Number**
3CA 8694

**Item 1. Named Insured and Mailing Address:**
BURNELL MARINE & SUPPLY, INC.
HC 70 BOX 58
BROWNSVILLE, TX. 78521

**Item 2.  Policy Period    From: 03/13/98        To: 03/13/99        Term: ANNUAL**
12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

Item 3.   Retroactive Date: NONE

Item 4.   Business Description: REPAIR OF OWNED NETS & BOATS

Item 5.   In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Form No. and Edition Date | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | | $800.00 |
| Professional Liability Coverage Part | | $ |
| | | $ |
| POLICY FEE | | $100.00 |
| STATE TAX | | $43.65 |
| STAMPING FEE | | $1.35 |
| | | $ |
| | | $ |
| Audit Period Annual unless otherwise stated: _____ | Total | $945.00 |

Item 6.   Forms and endorsements applicable to all Coverage Parts: CG0001(10-93), ME-001(4-95), ME-009(3-95),
              ME-048(6-96), ME-173(8-95)                                    SHOW NUMBERS
              011-1054(12/96)

Agent Name and Address: RAMSGATE MANAGING INSURANCE, SAN ANTONIO, TX.
Agent Number:  101430

Countersigned    03-19-98    LM        By _____
                         DATE

THIS COMMERCIAL LIABILITY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS,TOGETHER WITH THE COMMON POLICY CONDITIONS,
COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

## COMPANY

nCase 1:00-cv-00011  Document 1  Filed in TXSD on 01/14/2000  Page 23 of 42

# ESSEX INSURANCE COMPANY
**MARKEL**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number __3CA 8694__

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations) | $2,000,000.00 |
| Products/Completed Operations Aggregate Limit | $EXCLUDED |
| Personal and Advertising Injury Limit | $1,000,000.00 |
| Each Occurrence Limit | $1,000,000.00 |
| Fire Damage Limit | $50,000.00  any one fire |
| Medical Expense Limit | $EXCLUDED  any one person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of business:
☐ Individual  ☐ Joint Venture  ☐ Partnership  ☒ Organization (other than Partnership or Joint Venture)

Location of all premises you own, rent or occupy:

FISHERMAN'S ROAD, SHRIMP TURNING BASIN
BROWNSVILLE, TX. 78521

### PREMIUM

| Classification | Code No. | *Premium Basis | Rate PR/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| BUILDING OR PREMISES-OFFICE-PREMISES PRIMARILY OCCUPIED BY EMPLOYEES OF THE INSURED-INCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS-NOT FOR PROFIT | 61225 | A)6,000. | | 93.213 | $ | $ 750.00 MP |
| WAREHOUSES-PRIVATE-INCLUDING PRODUCTS AND/ OR COMPLETED OPERATIONS-NOT FOR PROFIT | 68707 | A)1,644. | | 30.877 | | INCLUDED |
| ADDITIONAL INSURED | | T)1 | | 50.00 | | 50.00 |

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

**TOTAL ADVANCE PREMIUM** $ 800.00

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

011-1061 (8-94)

COMPANY

CutePDF - www.fasou.com

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

        (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

        (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

    b. This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        (2) The "bodily injury" or "property damage" occurs during the policy period.

    c. Damages because of "bodily injury" includ damages claimed by any person or organiza tion for care, loss of services or death resultin at any time from the "bodily injury".

2. Exclusions.

    This insurance does not apply to:

    a. Expected or Intended Injury

        "Bodily injury" or "property damage" expecte or intended from the standpoint of the in sured. This exclusion does not apply to "bod ily injury" resulting from the use of reasonabl force to protect persons or property.

    b. Contractual Liability

        "Bodily injury" or "property damage" fc which the insured is obligated to pay damage by reason of the assumption of liability in contract or agreement. This exclusion doe not apply to liability for damages:

        (1) Assumed in a contract or agreement tha is an "insured contract", provided th "bodily injury" or "property damage" oc curs subsequent to the execution of th contract or agreement; or

        (2) That the insured would have in the ab sence of the contract or agreement

    c. Liquor Liability

        "Bodily injury" or "property damage" fc which any insured may be held liable b, rea son of:

        (1) Causing or contributing to the intoxicatio of any person;

        (2) The furnishing of alcoholic beverages to person under the legal drinking age or un der the influence of alcohol; or

        (3) Any statute, ordinance or regulation relat ing to the sale, gift, distribution or use c alcoholic beverages.

        This exclusion applies only if you are in th business of manufacturing, distributing sel ing, serving or furnishing alcoholic beverage:

d. **Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

   (a) Employment by the insured; or

   (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

   (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

   (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

   (i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

   (ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

Copyright, Insurance Services Office, Inc., 1992   CG 00 01 10 93

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. Damage to Property

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

Copyright, Insurance Services Office, Inc., 1992

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions.

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

 Copyright, Insurance Services Office, Inc., 1992 CG 00 01 10 93

## COVERAGE C. MEDICAL PAYMENTS

1. **Insuring Agreement.**

  a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

    (1) On premises you own or rent;

    (2) On ways next to premises you own or rent; or

    (3) Because of your operations;

    provided that:

    (1) The accident takes place in the "coverage territory" and during the policy period;

    (2) The expenses are incurred and reported to us within one year of the date of the accident; and

    (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

  b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

    (1) First aid administered at the time of an accident;

    (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions.**

We will not pay expenses for "bodily injury":

  a. To any insured.

  b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

  c. To a person injured on that part of premises you own or rent that the person normally occupies.

  d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

  e. To a person injured while taking part in athletics.

  f. Included within the "products-completed operations hazard".

  g. Excluded under Coverage A.

  h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for.

   (1) "Bodily injury" or "personal injury":

      (a) To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

      (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

      (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

      (d) Arising out of his or her providing or failing to provide professional health care services.

   (2) "Property damage" to property:

      (a) Owned, occupied or used by,

      (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees" or, if you are a partnership or joint venture, by any partner or member.

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

   (1) With respect to liability arising out of the maintenance or use of that property; and

   (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

Copyright, Insurance Services Office, Inc., 1992     CG 00 01 10 93

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy.

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit.

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Copyright, Insurance Services Office, Inc., 1992

c. You and any other involved insured must:

   (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   (2) Authorize us to obtain records and other information;

   (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

   This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

   This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

   (1) That is Fire, Extended Coverage, Builder's, Risk, Installation Risk or similar coverage for "your work";

   (2) That is Fire insurance for premises rented to you; or

   (3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

   When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

   When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   (2) The total of all deductible and self-insured amounts under all that other insurance.

   We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method of Sharing

   If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

    Copyright, Insurance Services Office, Inc., 1992    CG 00 01 10 93

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit.**

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations.**

   By accepting this policy, you agree:

   a. The statements in the Declarations are accurate and complete;

   b. Those statements are based upon representations you made to us; and

   c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds.**

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us.**

   If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew.**

   If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

   If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in a. above; or

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

      Copyright, Insurance Services Office, Inc., 1992      CG 00 01 10 93

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance,
correction, repair or replacement, but which
is otherwise complete, will be treated as
completed.

c. This hazard does not include "bodily injury"
or "property damage" arising out of:

(1) The transportation of property, unless the
injury or damage arises out of a condition
in or on a vehicle created by the "loading
or unloading" of it;

(2) The existence of tools, uninstalled equip-
ment or abandoned or unused materials;
or

(3) Products or operations for which the clas-
sification in this Coverage Part or in our
manual of rules includes products or com-
pleted operations.

15. "Property damage" means:

a. Physical injury to tangible property, including
all resulting loss of use of that property. All
such loss of use shall be deemed to occur at
the time of the physical injury that caused it;
or

b. Loss of use of tangible property that is not
physically injured. All such loss of use shall
be deemed to occur at the time of the "oc-
currence" that caused it.

16. "Suit" means a civil proceeding in which dam-
ages because of "bodily injury", "property dam-
age", "personal injury" or "advertising injury" to
which this insurance applies are alleged. "Suit"
includes:

a. An arbitration proceeding in which such
damages are claimed and to which you must
submit or do submit with our consent; or

b. Any other alternative dispute resolution pro-
ceeding in which such damages are claimed
and to which you submit with our consent.

17. "Your product" means:

a. Any goods or products, other than real prop-
erty, manufactured, sold, handled, distributed
or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business
or assets you have acquired; and

b. Containers (other than vehicles), materials,
parts or equipment furnished in connection
with such goods or products.

"Your product" includes:

a. Warranties or representations made at any
time with respect to the fitness, quality, dura-
bility, performance or use of "your product";
and

b. The providing of or failure to provide warnings
or instructions.

"Your product" does not include vending ma-
chines or other property rented to or located for
the use of others but not sold.

18. "Temporary worker" means a person who is fur-
nished to you to substitute for a permanent "em-
ployee" on leave or to meet seasonal or
short-term workload conditions.

19. "Your work" means:

a. Work or operations performed by you or on
your behalf; and

b. Materials, parts or equipment furnished in
connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any
time with respect to the fitness, quality, dura-
bility, performance or use of "your work"; and

b. The providing of or failure to provide warnings
or instructions.

 Copyright, Insurance Services Office, Inc., 1992 CG 00 01 10 93



ESSEX INSURANCE COMPANY

# MANDATORY ENDORSEMENT

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CA 8694 | 03/13/98 | BURNELL MARINE & SUPPLY, INC.<br>HC 70 BOX 58 |

**THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY.**

## COMBINATION ENDORSEMENT M/E-001

COVERAGE, TERMS AND CONDITIONS IN THIS POLICY ARE CHANGED BY THE FOLLOWING:

1.  **NEW ENTITIES:**
    This insurance does not apply to Part 4 of "Who Is An Insured" (Section II), Commercial General Liability Coverage Form.

2.  **MEDICAL PAYMENTS:**
    This insurance does not apply to Coverage C. "Medical Payments" (Section I), Commercial General Liability Coverage Form.

3.  **CONTRACTUAL LIABILITY AMENDMENT:**
    Wherever Contractual Liability is addressed in this policy, the following applies:
    This Insurance does not apply to any claim, suit, cost or expense arising out of "bodily injury," "personal injury," "property damage" or damages of any type assumed under any "Insured Contract" resulting from the sole negligence of the indemnitee.

4.  **LIQUOR LIABILITY EXCLUSION AMENDED:**
    Liquor Liability under 2. c. Exclusions, Commercial General Liability Coverage Form, Section I - Coverage, is replaced by the following and applies throughout this policy:
    This insurance does not apply to any claim, suit, cost or expense arising out of
    (1)  causing or contributing to the intoxication of any person and/or
    (2)  furnishing alcoholic beverages to any one under legal drinking age or under the influence of alcohol and/or
    (3)  any statute, ordinance or regulation relating to sales, gift, distribution or use of alcoholic beverage and/or
    (4)  any act or omission by any Insured, any employee of any Insured, patrons, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol. This exclusion applies to the entire policy, and where there is no coverage there is no duty to defend.

5.  **EMPLOYER'S LIABILITY EXCLUSION AMENDED:**
    Employer's Liability under 2. e. Exclusions, Commercial General Liability Coverage Form, Section I. - Coverage, is replaced by the following and applies throughout this policy:
    This insurance does not apply to any claim, suit, cost or expense arising out of "bodily injury" to
    (1)  any employee of the Named Insured arising out of and in the course of employment by any Insured, or while performing duties related to the conduct of the Insured's business, or
    (2)  the spouse, child, parent, brother, sister or relative of that employee as a consequence of (1).
    This exclusion applies whether an Insured may be liable as an employer or in any other capacity, and/or to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any "Insured Contract."
    Wherever the word employee appears above, it shall also mean any member, associate, leased worker, temporary worker of, or any person or persons loaned to or volunteering services to you. This exclusion applies to the entire policy, and where there is no coverage there is no duty to defend.

M/E-001 (4/95)

Page 1 of 3

6.    "AUTO" EXCLUSION AMENDED:
      With respect to any "auto" 2g. Exclusions, Commercial General Liability Coverage Form, Section I - Coverages, the first paragraph is replaced by the following, and applies throughout this policy: This insurance does not apply to any claim, suit, cost or expense arising out of, caused by or contributed to by the ownership, nonownership, maintenance, use or entrustment to others of any "auto." Use includes operation and "loading and unloading." This exclusion applies to the entire policy and where there is no coverage, there is no duty to defend.

7.    EXCLUSIONS
      Where there is no coverage under this policy, there is no duty to defend. This insurance does not apply to any claim, suit, cost or expense arising out of:

      A.    POLLUTION:
            (1)    "Bodily injury," "personal injury," "property damage" or any other type injury or expense;
            (2)    Damages for the devaluation of property or for the taking, use or acquisition or interference with the rights of others in or on property or air space;
            (3)    Any demand, order, governmental direction or request or any private party or citizen action that any Insured or any others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, including any fines and/or penalties;
            (4)    Any litigation or administrative procedure in which any Insured or others may be involved as a party; As a result of actual, alleged or threatened discharge, dispersal, release or escape of pollutants, or placement of pollutants, into or upon land, the atmosphere, or any water course or body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not. Pollutants means any solid, liquid, gaseous, thermal, acoustic, electric, magnetic, electromagnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, chemicals or materials, and waste. Waste includes, in addition to materials to be disposed of, materials to be recycled, reconditioned or reclaimed. All liability and expense arising out of or related to any form of pollution, caused intentionally or otherwise, and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any Insured or any other person or entity is excluded.

      B.    ASBESTOS, LEAD, OR SILICA DUST:
            (1)    Inhalation, ingestion, physical exposure to, absorption or actual or alleged presence of asbestos, silica dust, or lead, in any form, or toxic substances from same, and including but not limited to goods, products or structures containing same, and/or
            (2)    the existence of asbestos, silica dust or lead, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same, and/or
            (3)    any supervision, instructions, recommendations, requests, warnings or advice given or which should have been given in regard to asbestos, silica dust and/or lead, and/or
            (4)    any costs, including but not limited to, abatement, mitigation, removal or disposal of asbestos, silica dust, lead, paint containing lead, plumbing solder, pipes and fixtures, soil or anything containing asbestos, silica dust or lead, in any form, and/or
            (5)    any obligation to share damages with or repay anyone else who must pay damages in connection with the above.

      C.    PUNITIVE OR EXEMPLARY DAMAGE:
            Punitive or Exemplary Damages whether arising out of the acts of any Insured, any employee of any Insured or any other person.

      D.    ASSAULT AND/OR BATTERY:
            Assault and/or Battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person.

      E.    HIRING AND/OR SUPERVISION:
            Charges or allegations of negligent hiring, training, placement or supervision.

M/E-001  (4/95)

CtdPDF - www.fenio.com

F.  **EMPLOYMENT RELATED PRACTICES:**
  (1)  refusal to employ or termination of employment, and/or
  (2)  discrimination, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation or other employment-related practices, policies, acts or omissions, and/or
  (3)  any type of consequential injury as a result of (1) and/or (2).

G.  **ERRORS, OMISSIONS, ACTS, PROFESSIONAL LIABILITY, MALPRACTICE:**
  Any type error, omission, act, rendering of or failure to render any type professional service, unless specifically endorsed onto this policy.

H.  **ATHLETIC PARTICIPANTS:**
  "Bodily injury" or "personal injury" to any person while practicing for or participating in any event or function of a sporting or athletic nature.

I.  **DISCRIMINATION:**
  Any and all causes of alleged or actual discrimination.

J.  **CROSS SUITS:**
  Or caused by any Named Insured covered by this policy initiating causes of action or allegations against any other Insured covered by this policy.

K.  **INDEPENDENT CONTRACTORS/SUBCONTRACTORS - CONDITIONAL:**
  (1)  "Bodily injury," "personal injury" or "property damage" caused by acts of independent Contractors/subcontractors contracted by you or on your behalf unless you obtain Certificates of Insurance from them providing evidence of like coverage and limits as provided by this policy;
  (2)  Nor does this insurance apply to "bodily injury," "personal injury" or "property damage" sustained by any independent contractor/subcontractor, or any employee, leased worker, temporary or volunteer help of any independent contractor/subcontractor, unless the Named Insured is on site, directly supervising the work of the independent contractor/subcontractor at the time of injury or damage, and the Named Insured's actions, inactions or omissions are the direct cause of the injury or damage, or (b) the injury or damage, is directly caused by an employee of a Named Insured.

8.  ADDITIONAL CONDITION, LESSORS RISK ONLY:
  If this policy includes a Lessors Risk Only classification on the supplemental declarations, that premises is written and priced on the basis that your tenant carries liability insurance to protect you as well as himself. You must have a lease requiring any <u>commercial</u> tenant(s) to carry Commercial General Liability insurance, name you as an additional insured on their policy and furnish you with a  Certificate of Insurance. Parking Lot(s) or other land or premises owned by you and <u>leased</u> to tenant(s) must be included in such tenant(s) insurance.  Failure to comply with this condition does not void coverage under your policy for this/these premises, however, the Limits of Liability will be reduced and apply as follows:

Sublimit of Liability

  Each occurrence limit:  $50,000 Combined Single Limit
  Aggregate limit:      $50,000 Combined Single Limit

  The sublimit of liability shown above is the most we will pay for all damages <u>including</u> investigation and defense because of injury arising  out of any one "occurrence." The aggregate limit stated in this endorsement is the most we will pay for all claims, including investigation and defense, under this policy. If our limits are tendered or exhausted under this sublimit, we will not defend or continue to defend in any suit.

M/E-001  (4/95)

CHMPDF - www.texiro.com

 **MARKEL**   ESSEX INSURANCE COMPANY

## ADDITIONAL INSURED ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CA 8694 | 03/13/98 | BURNELL MARINE & SUPPLY, INC. HC 70 BOX 58 |

**THIS ENDORSEMENT CHANGES THE POLICY. READ IT CAREFULLY.**

SECTION II - WHO IS AN INSURED of the Commercial General Liability Form is amended to include:

Person or Entity:
PORT OF BROWNSVILLE
BROWNSVILLE NAVIGATION DISTRICT
1000 FOUST ROAD
BROWNSVILLE, TX. 78521

as an additional insured under this policy, but only as respects negligent acts or omissions of the Named Insured and only for occurrences, claims or coverage not otherwise excluded in the policy.

It is further agreed that where no coverage shall apply herein for the Named Insured, no coverage nor defense shall be afforded to the above identified additional insured.

Moreover, it is agreed that no coverage shall be afforded to the above identified additional insured for any bodily injury, personal injury, or property damage to any employee of the Named Insured or to any obligation of the additional insured to indemnify another because of damages arising out of such injury.

Additional Premium: _____

_____    /_____

AUTHORIZED REPRESENTATIVE              DATE

M/E-009 (3/95)                    COMPANY



ESSEX INSURANCE COMPANY

# DEDUCTIBLE ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.**

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CA 8694 | 03/13/98 | BURNELL MARINE & SUPPLY, INC.<br>HC 70 BOX 58 |

## SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| If provided by this policy:<br>Bodily Injury, Property Damage,<br>Professional or Personal and<br>Advertising Injury Liability | $  500.00 | Per Claim |
| Exception: | $ | Per Claim |

1. Our obligation under Bodily Injury Liability, Property Damage Liability, Professional Liability, Personal and/or Advertising Injury Liability, or any other coverage under this policy, to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above. The deductible amount stated above shall be applicable to each claim and will include loss payments, adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

2. The deductible amount stated above applies under the coverages respectively to all damages sustained by one person, or organization, as the result of any one occurrence.

3. The terms of this insurance, including those with respect to:
   (a)  Our right and duty to defend any "suits" seeking those damages; and
   (b)  Your duties in the event of an "occurrence," claim, or suit apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

AUTHORIZED REPRESENTATIVE          DATE

M/E-048 (6/96)                    COMPANY

 ESSEX INSURANCE COMPANY

MARKEL

# PRODUCTS/COMPLETED OPERATIONS HAZARD ENDORSEMENT - EXCLUSION

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CA 8694 | 03/13/98 | BURNELL MARINE & SUPPLY, INC.<br>HC 70 BOX 58 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

We do not cover claims, loss, cost or expense for "bodily injury", "property damage", "personal injury" or "advertising injury" included with the "products/completed operations hazard".

AUTHORIZED REPRESENTATIVE           DATE

M/E-173 (8/95)                    Page 1 of 1
                        COMPANY



# ESSEX INSURANCE COMPANY

## ENDORSEMENT

01

*The following spaces preceded by an asterick (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CA 8694 | 03-13-98 | BURNELL MARINE & SUPPLY, INC. |

IN CONSIDERATION OF THE PREMIUM ALREADY CHARGED IT IS HEREBY AGREED THAT FORM 011-1056(9/93) IS AMENDED TO SHOW FORM 011-1061(8/94) IS ATTACHED.

IT IS ALSO AGREED THAT FORM CG2116(11/85) IS ADDED TO THIS POLICY.

ALL OTHER TERMS REMAIN THE SAME.

03-13-98/99
05-29-98/DT



Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

RAMSGATE MANAGING INSURANCE
SAN ANTONIO, TX

ENDORSEMENT #1

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

AUTHORIZED REPRESENTATIVE