/3

21718\lep\ch

United States District Court
Southern District of Texas
FILED

JAN 0 8 2001

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| ESSEX INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-00-011 |
| | § | |
| BURNELL MARINE & SUPPLY, INC.; | § | |
| CHARLES R. BURNELL, Individually | § | |
| and d/b/a BURNELL ENTERPRISES; | § | |
| and CHARLES B. BURNELL, Individually | § | |
| and d/b/a BURNELL ENTERPRISES, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF ESSEX INSURANCE COMPANY'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF

Respectfully submitted,

**FANNING HARPER & MARTINSON**
A Professional Corporation

By: _Steven R. Shattuck_

**ALAN MOORE**
State Bar No.14320075
**STEVEN R. SHATTUCK**
State Bar No. 18133700
**LESLIE ECHOLS PITTS**
State Bar No. 00784007
300 Preston Commons West
8117 Preston Road
Dallas, Texas 75225
(214) 369-1300 (office)
(214) 987-9649 (telecopier)
**ATTORNEYS FOR PLAINTIFF
ESSEX INSURANCE COMPANY**

Plaintiff Essex Insurance Company's Motion
For Partial Summary Judgment And Brief In Support Thereof

# TABLE OF CONTENTS

STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE UNDISPUTED SUMMARY JUDGMENT FACTS . . . . . . . . . . . . . . 3

    A.    THE UNDERLYING LAWSUIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    THE POLICY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    THE DISPUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY JUDGMENT ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY OF THE ARGUMENT AND SUMMARY JUDGMENT GROUNDS . . . . . . . . 5

SUMMARY JUDGMENT EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.    DETERMINING THE DUTY TO DEFEND IN TEXAS . . . . . . . . . . . . . . . . . . 7

    B.    THE ALLEGATIONS ON WHICH COVERAGE DEPENDS . . . . . . . . . . . . . 8

    C.    THE POLICY PROVISIONS EXCLUDING COVERAGE . . . . . . . . . . . . . . . . 9

    D.    TRIGGERING THE DUTY TO DEFEND . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Plaintiff Essex Insurance Company's Motion**
**For Partial Summary Judgment And Brief In Support Thereof**

## TABLE OF AUTHORITIES

## CASES

*Aberdeen Insurance Co. v. Bovee,*
 777 S.W.2d 442, 444 (Tex. App. - El Paso 1989, no writ) . . . . . . . . . . . . . . . . . . . . . . . 10

*Argonaut S.W. Ins. Co. v. Maupin,*
 500 S.W.2d 633, 635 (Tex. !973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Baldwin v. Aetna Casualty & Surety Co.,*
 750 S.W.2d 919, 921 (Tex. App. - Amarillo 1988, writ denied) . . . . . . . . . . . . . . . . . . . 8

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cicciarella v. Amica Mut. Ins. Co.,*
 66 F.3d 764 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Continental Casualty Co. v. Hall,*
 761 S.W.2d 54 (Tex. App. - Houston [14th Dist.] 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fidelity & Guar. Ins. Underwriters, Inc. v. McManus,*
 633 S.W.2d 787 (Tex. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Gonzales v. American States Ins. Co.,*
 628 S.W.2d 184 (Tex. App. - Corpus Christi 1982, no writ) . . . . . . . . . . . . . . . . . . . . . . 8

*Gulf Chemical & Metallurgical Corp. v. Associated Metals & Minerals Corp.,*
 1 F.3d 365 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gulf Ins. Co. v. Texas Casualty Ins. Co.*
 580 S.W.2d 645 (Tex. Civ. App. - Fort Worth 1979, writ ref'd n.r.e.) . . . . . . . . . . . . . . 7

*J.E.M. v. Fidelity & Cas. Co. of New York,*
 928 S.W.2d 668 (Tex. App. - Houston [1st Dist.] 1996, no writ) . . . . . . . . . . . . . . . . . . 7

*LaFarge Corp. v. Hartford Cas. Ins. Co.,*
 61 F.3d 389 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Members Insurance Company v. Branscum,*
 803 S.W.2d 462 (Tex. App. - Dallas 1991, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Plaintiff Essex Insurance Company's Motion**
**For Partial Summary Judgment And Brief In Support Thereof**

*Metropolitan Property & Cas. Co. v. Murphy,*
   896 F.Supp. 645 (N.D. Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*State Farm Fire & Cas. Co. v. Wade,*
   827 S.W.2d 448 (Tex. App. - Corpus Christi 1992, writ denied) . . . . . . . . . . . . . . . . 7

*State Farm Life Ins. Co. v. Beaston,*
   907 S.W.2d 430 (Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Temple-Inland Forest Products Corp. v. U.S.,*
   988 F.2d 1418 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Terra International, Inc. v. Commonwealth Lloyd's Insurance Co.,*
   829 S.W.2d 270 (Tex. App. - Dallas 1992, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Westchester Fire Insurance Co. v. American General Fire and Casualty Co.,*
   790 S.W. 2d 816 (Tex. App. - Austin 1990, no writ) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Whatley v. City of Dallas,*
   758 S.W.2d 301 (Tex. Civ. App. - Dallas 1988, writ denied) . . . . . . . . . . . . . . . . . . 7

## STATUTES

28 U.S.C. §2201 (West 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R.Civ. P. 56 (West 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Fed. R.Civ. P. 57 (West 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**Plaintiff Essex Insurance Company's Motion**
**For Partial Summary Judgment And Brief In Support Thereof**

21718\lep\ch

United States District Court
Southern District of Texas
FILED

JAN 0 8 2001

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ESSEX INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-00-011 |
| | § | |
| BURNELL MARINE & SUPPLY, INC.; | § | |
| CHARLES R. BURNELL, Individually | § | |
| and d/b/a BURNELL ENTERPRISES; | § | |
| and CHARLES B. BURNELL, Individually | § | |
| and d/b/a BURNELL ENTERPRISES, | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF ESSEX INSURANCE COMPANY'S MOTION
### FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES **ESSEX INSURANCE COMPANY** ("Essex"), Plaintiff in the above-styled

and numbered civil action, and files this its Motion for Partial Summary Judgment on its Complaint

for Declaratory Relief against the above-named Defendants, and on Defendants' Counterclaim for

such relief against Plaintiff. In support of its motion, Plaintiff respectfully shows the Court as

follows:

### STATEMENT OF NATURE AND STAGE OF THE PROCEEDINGS

1.      This is an insurance coverage dispute in which the parties' seek a declaration of their

respective rights and/or obligations under a commercial general liability insurance policy issued by

Essex to Defendant Burnell Marine & Supply, Inc., as the named insured. *See* Plaintiff's Original

Complaint for Declaratory Relief ("Plaintiff's Complaint"); and Defendants' Original Answer and Counterclaim ("Defendants' Counterclaim"), on file herein.

2.     Plaintiff's Original Complaint for Declaratory Relief was filed on January 14, 2000, seeking a declaration by this Court pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure, that it had no duty to defend or indemnify Defendants from the claims *then* asserted against them in an underlying personal injury suit styled *Ramon Guzman v. Charles B. Burnell, Individually and d/b/a Burnell Enterprises; Charles B. Burnell, Individually and d/b/a Burnell Enterprises; Burnell Marine & Supply, Inc.; and Swamp Irish*; Cause No. 99-04-001950, filed in the 357th Judicial District Court of Cameron County, Texas ("Underlying Lawsuit"). *See* Plaintiff's Complaint. Defendants counterclaimed on or about April 17, 2000, seeking a declaration that coverage exists under the policy for such claims. *See* Defendants' Counterclaim.

3.     Thereafter, an amended pleading entitled "Plaintiff's Second Amended Pleading"[1] was filed in the Underlying Lawsuit asserting, for the first time, claims *potentially* covered under the subject insurance policy. *See* Exhibit A. Upon Defendants' tender, on or about September 1, 2000, of the amended pleading to Plaintiff for defense, Essex agreed to defend Defendants in the Underlying Lawsuit subject to a complete reservation of its rights under the policy. *See* Exhibits B1 and B2.

---

[1]Plaintiff notes that at the time it filed its Complaint for Declaratory Relief herein, the latest filed pleading in the Underlying Lawsuit was entitled "Plaintiff's *Third* Amended Petition," filed August 24, 1999. *See* Exhibit C. In fact, that petition represented Guzman's *first* amended pleading, which was filed almost one year *before* the Plaintiff's Second Amended Petition - the pleading Essex determined to potentially trigger coverage under the subject insurance policy.

**Plaintiff Essex Insurance Company's Motion**                    **Page 2**
**For Partial Summary Judgment And Brief In Support Thereof**

4.      As a result, the only justiciable issue remaining in this case is what coverage, if any,

Defendants' are entitled to under the policy for the defense costs they incurred in the Underlying

Lawsuit *prior to* their September 1, 2000 tender of Plaintiff's Second Amended Pleading to Plaintiff

for defense.   Stated differently, the only coverage issue remaining in this case is whether the

pleadings on file in the Underlying Lawsuit *prior to* the August 30, 2000 filing of Plaintiff's Second

Amended Petition assert any claims potentially covered under the subject insurance policy.   By its

motion, Plaintiff seeks judgment on this issue, as a matter of law.[2]

## STATEMENT OF THE UNDISPUTED SUMMARY JUDGMENT FACTS

### A.      THE UNDERLYING LAWSUIT

5.      The Underlying Lawsuit is for personal injury damages Ramon Guzman ("Guzman")

claims to have incurred while shoveling cement into the hull of a shrimpboat owned by Swamp Irish,

Inc.  *See* Exhibits A, C and D at ¶IV.  Specifically, Guzman claims to have been splattered with

cement while performing the subject bilging operations, and that as a result, lost his right eye.

*See* Exhibits A, C and D at ¶IV.  Guzman maintains that his injuries were the direct and proximate

result of Defendants' individual and/or collective negligence in failing to supply him with appropriate

protective gear; warn him of the potential dangers associated with his work; properly hire, train or

supervise Defendants' employees with regard to such operations; and/or provide him with medical

treatment.  *See* Exhibits A, C and D at ¶IV.6 and ¶V.

6.      At *all* times Guzman has maintained that he was performing the complained of bilging

operations *while employed by Burnell Marine & Supply, Inc., as a "temporary day laborer." See*

---

[2]Although the issue presented hereby is dispositive of the parties' entire coverage dispute, it does not address the Plaintiff's claim for attorney's fees.  As a result, the motion is being filed as a *partial* motion for summary judgment.

**Plaintiff Essex Insurance Company's Motion**                                      **Page 3**
**For Partial Summary Judgment And Brief In Support Thereof**

Exhibits A, C and D at ¶V.3. However, on or about August 30, 2000, Guzman filed an amended petition in the Underlying Lawsuit which included, for the first time, an *alternative*[3] pleading that he had been hired as "an employee, leased worker and/or temporary help" by one of Burnell Marine & Supply, Inc.'s independent contractors, Adan Lopez. *See* Exhibit A at ¶IV.7-14. Prior to that filing, Guzman *never* claimed to have been employed by any entity other than the named insured, or to have been employed by Burnell Marine & Supply, Inc., in any capacity other than as a "temporary day laborer." *See* Exhibits C and D.

**B.     THE POLICY**

6.     At all relevant times, Essex insured Defendant Burnell Marine & Supply, Inc., under a Commercial General Liability Insurance Policy, numbered 3CA 8694, effective March 13, 1998 through March 13, 1999 ("Policy"). *See* Exhibit E. As pertinent to these proceedings, the Policy obligates Essex to defend and indemnify its "insureds" from damages it must legally pay because of "bodily injury" or "property damage" caused by an "occurrence" to which the insurance otherwise applies. As shown below, the Policy specifically provides that it does *not* apply to any claims for "bodily injury" to an "employee" of the named insured, as set forth therein. *See* Exhibit E.

**C.     THE DISPUTE**

7.     Despite the clear and unambiguous Policy language precluding such coverage, Defendants have demanded and continue to demand coverage for *all* of their defense costs in the Underlying Lawsuit, including those incurred *prior to* the filing of Plaintiff's Second Amended Petition by Guzman. It is Essex' position that Defendants are not entitled to such coverage because

---

[3]Plaintiff's Second Amended Petition in the Underlying Lawsuit continues to assert that Guzman was hired by Burnell Marine & Supply, Inc. The allegations regarding his alleged employment by Adan Lopez are merely in the alternative. *See* Exhibit A at ¶IV.

the allegations asserted in those prior pleadings do *not* fall within the Policy's terms and provisions of coverage, as a matter of law.  As a result, Plaintiff is entitled to summary judgment against Defendants as set forth herein.

## SUMMARY JUDGMENT ISSUES

8.      Plaintiff seeks the Court's consideration and determination of the following summary judgment issues:

A.      whether the pleadings on file in the Underlying Lawsuit *prior to* the August 30, 2000 filing of Plaintiff's Second Amended Petition assert any claims potentially covered under the subject insurance policy; and

B.      if not, whether Plaintiff had any duty under the policy to defend Defendants in the Underlying Lawsuit prior to their September 1, 2000 tender of Plaintiff's Second Amended Petition, or to now reimburse them for any attorney's fees or costs incurred in connection with that defense.

## SUMMARY OF THE ARGUMENT AND SUMMARY JUDGMENT GROUNDS

9.      Essex is entitled to summary judgment on its request for declaratory relief against Defendants on the issue of its duty to defend Defendants for the claims asserted against them in the Underlying Lawsuit *prior to* the filing of Plaintiff's Second Amended Petition by Guzman, because the summary judgment evidence conclusively establishes that such allegations are clearly and unambiguously precluded under the Policy's "employer's liability" exclusion, as a matter of law.

## SUMMARY JUDGMENT EVIDENCE

10.     This motion is supported by the pleadings on file in this cause and other summary judgment evidence, and, in particular, the following Exhibits:

**Plaintiff Essex Insurance Company's Motion**                               **Page 5**
**For Partial Summary Judgment And Brief In Support Thereof**

A.    Plaintiff's Second Amended Petition in the Underlying Lawsuit, a certified copy of which is attached hereto as Exhibit "A" and incorporated herein for all purposes;

B.    Original Affidavit of Steven R. Shattuck, attached hereto as Exhibit "B" and incorporated herein by reference for all purposes.

1.    Demand Letter dated September 1, 2000, from attorney Javier Gonzalez, a true and correct copy of which is attached to the original affidavit of Steven R. Shattuck as Exhibit "B1" and incorporated herein by reference for all purposes.

2.    Reservation of Rights Letter dated October 12, 2000, a true and correct copy of which is attached to the original affidavit of Steven R. Shattuck as Exhibit "B2" and incorporated herein by reference for all purposes.

C.    Plaintiff's Third Amended Petition in the Underlying Lawsuit, a certified copy of which is attached hereto as Exhibit "C" and incorporated herein for all purposes.

D.    Plaintiff's Original Petition in the Underlying Lawsuit, a certified copy of which is attached hereto as Exhibit "D" and incorporated herein for all purposes; and

E.    Commercial General Liability Insurance Policy No. 3CA 8694, effective March 13, 1998 through March 13, 1999, a true and correct copy, as admitted by Defendants,[4] of which is attached hereto as Exhibit "E" and incorporated herein for all purposes.

## SUMMARY JUDGMENT STANDARD

11.    Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate in any kind of action:

---

[4]In their Original Answer and Counterclaim, Defendants aver that Exhibit E, previously filed herein as Exhibit B to Plantiff's Complaint, is a true and correct copy of the subject Policy. *See* Defendants' Original Answer and Counterclaim at ¶IV.9.

> . . .if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*See* Fed. R. Civ. P. 56(c).

12. Thus, the party moving for summary judgment need not support its motion with affidavits or other evidence negating the nonmovant's claim. Instead, it is the nonmovant which must present evidence sufficient to establish the existence of each element of its claim on which it will have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

13. In this case, Essex' claim for declaratory relief depends entirely upon the interpretation and construction of the subject insurance contract. In Texas, the interpretation of an unambiguous contract is a question of law for the Court. *Temple-Inland Forest Products Corp. v. U.S.*, 988 F.2d 1418, 1421 (5th Cir. 1993). This general rule has been held to apply to insurance contracts as well. *See State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430 (Tex. 1995); *Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764 (5th Cir. 1995). It is, therefore, well settled that an insurer's duty to defend presents a justiciable issue suitable for declaratory judgment action. *J.E.M. v. Fidelity & Cas. Co. of New York*, 928 S.W.2d 668, 671 (Tex. App. - Houston [1st Dist.] 1996, no writ); *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 450 (Tex. App. - Corpus Christi 1992, writ denied). As a result, Essex' claim may be properly resolved by summary judgment.

## ARGUMENTS AND AUTHORITIES

### A. DETERMINING AN INSURER'S DUTY TO DEFEND IN TEXAS

14. An insurer's duty to defend is contractual in Texas. *Whatley v. City of Dallas*, 758 S.W.2d 301, 304 (Tex. Civ. App. - Dallas 1988, writ denied); *Gulf Ins. Co. v. Texas Casualty Ins.*

*Co.*. 580 S.W.2d 645, 647-48 (Tex. Civ. App. - Fort Worth 1979, writ ref'd n.r.e.). Thus, generally speaking, an insurer is required to defend only those cases which are determined to potentially fall within a policy's terms and provisions of coverage. *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982). Therefore, when determining whether a duty to *defend* exists in a particular case, the insurer must consider the allegations of the petition in light of the specific policy at issue. *Argonaut S.W. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. !973).

15.     This approach, known as the "complaint allegation" or "eight corners" rule, means that the trier of fact must examine *only* the allegations contained in the complaint in light of the specific policy language at issue, when determining whether a duty to defend exists in a particular case. *See, e.g., Gulf Chemical & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993); *Argonaut*, 500 S.W.2d at 635. Thus, the truth or falsity of an allegation is of no significance or consequence in a coverage determination. *Baldwin v. Aetna Casualty & Surety Co.*, 750 S.W.2d 919, 921 (Tex. App. - Amarillo 1988, writ denied); *Gonzales v. American States Ins. Co.*, 628 S.W.2d 184, 187 (Tex. App. - Corpus Christi 1982, no writ).

## B.     THE ALLEGATIONS ON WHICH COVERAGE DEPENDS

16.     When engaging in the above analysis, Texas holds that it is the *factual* allegations of the underlying petition, not the legal theories asserted therein, on which the subject determination must be made. *See, e.g., Continental Casualty Co. v. Hall,* 761 S.W.2d 54, 56 (Tex. App. - Houston [14th Dist.] 1988, cert. denied, 495 U.S. 932 (1990); *Terra International, Inc. v. Commonwealth Lloyd's Insurance Co.*, 829 S.W.2d 270 (Tex. App. - Dallas 1992, no writ); *Metropolitan Property & Cas. Co. v. Murphy*, 896 F.Supp. 645 (N.D. Tex. 1995) (coverage determination must focus on the factual allegations in the subject complaint, not on the legal theories asserted). Thus, as the Texas

Supreme Court directed in *Fidelity & Guar. Ins. Underwriters v. McManus*, 633 S.W.2d 787 (Tex.

1982), unless the petition alleges *facts* falling within the policy's terms and conditions of coverage,

there can be no duty on the insurer's part to defend. *Id* at 788 [italics supplied].

17.     As previously noted, Guzman has at *all* times claimed to have been hired by the named

insured to perform the complained of cement work, even in his latest amended pleading on which

Essex agreed to assume Defendants' defense.   Specifically, *all* of Guzman's pleadings in the

Underlying Lawsuit state:

> On or about April 22, 1998, Plaintiff Ramon Guzman *was hired by Burnell Marine and Supply, Inc., at the Brownsville Shrimp Turning Basin in Cameron County, Texas to perform cement work.*  The Plaintiff was more specifically hired by Defendant Charles R. Burnell on behalf of his father Charles B. Burnell as a temporary day laborer.

*See* Exhibits A, C and D at ¶IV.3. [italics supplied].  Thus, not until Plaintiff's Second Amended

Pleading did Guzman ever suggest that he may have actually been employed by someone or some

entity other than the named insured.

## C.     THE POLICY PROVISIONS PRECLUDING COVERAGE

18.     Assuming coverage otherwise exists under the Policy,[5] it expressly and specifically

precludes any claim for "bodily injury" to the named insureds "employees," as that term is defined

therein. Specifically, the Policy contains an attached Mandatory Endorsement, entitled "Combination

Endorsement M/E-001," which plainly and unambiguously precludes any coverage for the following:

*       *       *

---

[5]The fact that Plantiff's motion is not based on all of the policy defenses asserted in its Complaint should not be construed as a waiver of any such grounds.

**Plaintiff Essex Insurance Company's Motion**                                    **Page 9**
**For Partial Summary Judgment And Brief In Support Thereof**

5. **EMPLOYER'S LIABILITY EXCLUSION AMENDED:**
Employer's Liability under 2.e. Exclusions, Commercial General Liability Coverage Form, Section I.-Coverage, is replaced by the following and applies throughout this policy:

*This insurance does not apply to any claim, suit, cost or expense arising out of "bodily injury" to*

> *(1)      any employee of the Named Insured arising out of and in the course of employment by an Insured, or while performing duties related to the conduct of the Insured's business,....*

This exclusion applies whether an Insured may be liable as an employer or in any other capacity, and/or to any obligation to share damages because of the injury, as well as liability assumed under any "Insured Contract."

Wherever the word employee appears above, it shall also mean any member, associate, leased worker, *temporary worker* of, or any person or persons loaned to or volunteering services to you. *This exclusion applies to the entire policy, and where there is no coverage there is no duty to defend.*

*      *      *

*See* Exhibit E. [italics supplied].

19.      Texas courts haven taken a plain and straightforward approach when interpreting and applying this exclusion. For instance, in *Aberdeen Insurance Co. v. Bovee*, 777 S.W.2d 442, 444 (Tex. App. - El Paso 1989, no writ), the court concluded that because the plaintiff in the underlying case was an employee of the insured defendant, and her alleged injury arose out of her employment, the "employer's liability" exclusion at issue therein excluded plaintiff's claim from coverage.

20.     Later, in *Westchester Fire Insurance Co. v. American General Fire and Casualty Co.*, 790 S.W.2d 816 (Tex. App. - Austin 1990, no writ), the Austin Court of Appeals was asked to construe an employer's liability exclusion similar to that at issue herein.  There, an employee was killed when he struck a high voltage line while in the course of his employment with the insured company.  The company's insurance company declined to defend and indemnify the company based on the employee exclusion.  The court stated that the exclusion was plainly intended to exclude any obligation on the insurer's part to pay any liability incurred by the insured company by reason of bodily injury sustained by an employee.

21.     As previously noted, Guzman's original and first amended petitions[6] allege that he was *hired by* the named insured as a "temporary day laborer" to perform the subject bilging operations.  It is out of that employment that *all* of Plaintiff's injuries are alleged to have occurred.  *See* Exhibits C and D at ¶IV.  In fact, Guzman has never abandoned these contentions, but merely amended his pleadings to assert, in the alternative, that he was employed by an independent contractor hired by Burnell Marine & Supply, Inc.  *See* Exhibit A at ¶IV.  It is on these alternative pleadings, and only such pleadings, that Essex' duty to *defend* in the Underlying Lawsuit has been triggered under the Policy.  *See* Exhibit B2.  It is clear, therefore, that prior to those pleadings Plaintiff had *no* duty to defend Defendants in the Underlying Lawsuit as the allegations asserted therein arose entirely out of Guzman's alleged employment with the named insured.

---

[6] Again, Plaintiff's first amended petition in the Underlying Lawsuit, filed August 24, 1999, was erroneously entitled Plaintiff's Third Amended Petition.  This is the petition on which Essex' Complaint of Declaratory Relief was based, as the latest filed pleadings.  Plaintiff's Second Amended Petition containing the subject alternative pleadings, filed August 30, 2000, was not served on or tendered to Plaintiff until September 1, 2000.

**Plaintiff Essex Insurance Company's Motion**                          **Page 11**
**For Partial Summary Judgment And Brief In Support Thereof**

## D.    TRIGGERING THE DUTY TO DEFEND

22.    Under Texas law, the duty to defend has been held *not* to arise until a petition alleging a potentially covered claim is tendered to the insurer. *See Members Insurance Company v. Branscum*, 803 S.W.2d 462, 466 (Tex. App. - Dallas 1991, no writ).  This, the Fifth Circuit has explained, is required under the "voluntary payment" provisions of most commercial general liability insurance policies providing that no insured shall voluntarily make or assume any obligation without the insurer's consent, *except at their own expense. See LaFarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389 (5th Cir. 1995) [citations omitted].  The Policy at issue herein contains such a coverage condition. *See* Exhibit E.  Therefore, Defendants are not entitled to the recovery of *any* defense costs expended in the Underlying Lawsuit prior to their September 1, 2000 tender of Plaintiff's Second Amended Petition triggering such coverage (i.e. Plaintiff's Second Amended Petition), as a matter of law.

### CONCLUSION

23.    Until filing Plaintiff's Second Amended Petition in the Underlying Lawsuit on or about August 30, 2000, Guzman's claims against Defendants were alleged to have arisen entirely out of his employment by Burnell Marine & Supply, Inc., as a "temporary day laborer."  The Policy plainly and unambiguously excludes claims for "bodily injury" to employees of the named insured. The Policy defines "employee" to include a "temporary worker."  As a result, Guzman's *pre*-August 30, 2000 pleadings were precluded from coverage under the Policy as a matter of law.

24.    Plaintiff is, therefore, entitled to partial summary judgment on its Complaint for Declaratory Relief against Defendants, as well as Defendants' Counterclaim against it, that it has no duty to defend Defendant from, or reimburse the attorney's fees and costs associated with their defense of, the claims asserted by Guzman in the Underlying Lawsuit against Defendants *prior to*

September 1, 2000. Of course, in the event the Court does not grant Plaintiff *all* of the relief requested herein, Essex requests that the Court make such findings and enter such orders as it deems appropriate under Rule 56(d) of the Federal Rules of Civil Procedure.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Essex Insurance Company respectfully requests that the Court grant its Motion For Partial Summary Judgment as set forth herein, that the Court take evidence of Essex' attorney's fees incurred in the prosecution of its Complaint, and that the Court grant it such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

**FANNING HARPER & MARTINSON**
A Professional Corporation

By: _____

**ALAN MOORE**
State Bar No.14320075
**STEVEN R. SHATTUCK**
State Bar No. 18133700
**LESLIE ECHOLS PITTS**
State Bar No. 00784007
300 Preston Commons West
8117 Preston Road
Dallas, Texas 75225
(214) 369-1300 (office)
(214) 987-9649 (telecopier)

**ATTORNEYS FOR PLAINTIFF**
**ESSEX INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the Plaintiff Essex Insurance Company's Motion for Partial Summary Judgment and Brief in Support Thereof was delivered to all attorneys of record, in compliance with Rule 5 of the Federal Rules of Civil Procedure, on this 5th day of January, 2001.

**STEVEN R. SHATTUCK**

CVISPDF – www.fesvio.com

Cause No.: <u>99-04-01950-E</u>                  **CERTIFIED COPY**

| | | |
|---|---|---|
| RAMON GUZMAN,<br>*Plaintiff* | § | IN THE JUDICIAL DISTRICT |
| | § | |
| VS. | § | CAMERON, COUNTY, TEXAS |
| | § | |
| CHARLES B. BURNELL,<br>INDIVIDUALLY AND D/B/A<br>BURNELL ENTERPRISES;<br>CHARLES R. BURNELL,<br>INDIVIDUALLY AND D/B/A<br>BURNELL ENTERPRISES;<br>BURNELL MARINE & SUPPLY,<br>INC.; SWAMP IRISH, INC.; AND<br>ADAN LOPEZ<br>*Defendants* | § | |



357th DISTRICT COURT

## <u>PLAINTIFF'S SECOND AMENDED PETITION</u>

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Plaintiff RAMON GUZMAN, Individually, (hereinafter referred to herein for all purposes collectively as "Plaintiff"), complaining of Defendants CHARLES B. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES; CHARLES R. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES; BURNELL MARINE & SUPPLY, INC.; SWAMP IRISH, INC.; AND ADAN LOPEZ(hereinafter referred to herein for all purposes collectively as "Defendants") and for cause of action would respectfully show the Court the following:

### I.

### <u>DISCOVERY CONTROL PLAN</u>

This matter shall be governed by Level 2 of the Discovery Control Plan in accordance with Rule 190 of the Texas Rules of Civil Procedure.

---

**PLAINTIFF'S ECOND AMENDED PETITION, Page -1**

## II.
## PARTIES

CERTIFIED COPY

a.   Plaintiff **RAMON GUZMAN** is a resident of Brownsville, Cameron County, Texas.

b.   Defendant  CHARLES B. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES has already been served with citation at HC 70, Box 58, Brownsville, Texas 78521.

c.   Defendant CHARLES R. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES has already been served with citation at HC 70, Box 58, Brownsville, Texas 78521.

d.   Defendant BURNELL MARINE & SUPPLY, INC. is a Texas Corporation duly formed and existing under the laws of the State of Texas and has already been served with citation by serving its Registered Agent, Mr. Charles Burnell at HC 70,  Box 58, Brownsville, Texas 78521.

e.   Defendant SWAMP IRISH, INC., is a Texas Corporation duly formed and existing under the laws of the State of Texas and has already been served with citation by serving its Registered Agent, Mr. Robert J. Hymer at Starr Route Box 5, Brownsville, Texas 78520.

f.   Defendant **ADAN LOPEZ**, is an individual residing at 1974 Monaco La Posada #3 in Brownsville, Cameron County, Texas 78521.  **It is requested that citation be prepared and that this defendant be served by certified mail return receipt requested pursuant to the Texas Rules of Civil Procedure.**

## III.
## JURISDICTION AND VENUE

1.    This Court has jurisdiction of this matter in that the amount in controversy is within the jurisdictional requirements of this Court, and all parties are subject to this Court's jurisdiction by reason of their residence in Cameron County, Texas.

2.    Venue of this proceeding is proper in Cameron County, Texas pursuant to Texas Civil Practice and Remedies Code Sections 15.002 and 15.005.  All or a substantial part of the events and/or omissions giving rise to the claims herein occurred in Cameron County.  Furthermore, Plaintiff was a resident of Cameron County, Texas at the time the cause of action accrued.  Defendants also reside and do business in Cameron County, Texas.

CERTIFIED COPY

## IV.

## FACTS

3.     On or about April 22, 1998, Plaintiff Ramon Guzman was hired by Burnell Marine and Supply, Inc., at the Brownsville Shrimp Turning Basin in Cameron County, Texas to perform cement work.  The Plaintiff more specifically was  hired by Defendant Charles R. Burnell on behalf of his father Charles B. Burnell as a temporary day laborer.  He was hired along with many other men to shovel cement into 5 gallon buckets and dump these buckets into the hull of a shrimp boat, named the "Success", which is owned by Charles B. Burnell, who is president of a  Texas Corporation, Swamp Irish, Inc., which owns this shrimp boat.  The purpose of this cement was to act as ballast for the boat.

4.     As the Plaintiff was shovelling the cement into buckets, some of the cement splattered into his right eye causing him great pain, anguish, total loss of vision in his right eye and subsequent loss of his right eye which has been replaced with a glass eye.

5.     At the time of the incident in question, the Plaintiff complained of pain to Defendant CHARLES R. BURNELL, his immediate supervisor on board the shrimp boat but no assistance or offer of medical care was provided.

6.     The incident in question, and the damages and injuries for  which   this lawsuit is maintained  by  Plaintiff,  was  proximately  caused by the Defendant's failure to provide protective gear, failure to warn and make aware  the plaintiff of the dangerous condition and acid like additives in the cement, and failure to train the plaintiff  on the part of the Defendants named herein.  Plaintiff contends that nothing  he  did or failed to do caused or in any way contributed to his injuries

7.     **IN THE ALTERNATIVE AND WITHOUT WAIVING ANY OF PLAINTIFF'S CLAIMS** plaintiff alleges that on or about April 22, 1998, Plaintiff Ramon Guzman was hired by Adan Lopez, an independent contractor by Defendant, Charles R. Burnell who was acting in the course and scope of his employment for Defendant, Burnell Marine & Supply, Inc.  Plaintiff Ramon Guzman was hired as an employee,

---

PLAINTIFF'S ECOND AMENDED PETITION, Page -3

CERTIFIED COPY

leased worker and/or temporary help of this independent contractor Adan Lopez at the Brownsville Shrimp Turning Basin in Cameron County, Texas to perform cement work.

8.    He was hired along with many other men to shovel cement into 5 gallon buckets and dump these buckets into the hull of a shrimp boat, named the "Success", which is owned by Charles B. Burnell, who is president of a  Texas Corporation, Swamp Irish, Inc., which owns this shrimp boat.  The purpose of this cement was to act as ballast for the boat.

9.    This cement was delivered by a cement company truck that dumped the cement directly onto the wooden pier and left the premises.

10.    Adan Lopez and Charles R. Burnell, became worried that the cement would dry on the wooden pier so they ordered their employees to quickly shovel the cement into 5 gallon buckets, and pour these buckets of cement into the hull of the said shrimpboat.

11.    As the Plaintiff was shovelling the cement into buckets, some of the cement splattered into his right eye causing him great pain, anguish, total loss of vision in his right eye and subsequent loss of his right eye which has been replaced with a glass eye.

12.    At the time of the incident in question, Burnell Marine & Supply, Inc., through its employee, Charles R. Burnell was on site directly supervising the work of the independent contractor, Adan Lopez when the plaintiff's injury occurred.

13.    At the time of the incident in question, the Plaintiff complained of pain toDefendant CHARLES R. BURNELL and ADAN LOPEZ, his immediate supervisors but no assistance or offer of medical care was provided.

14.    The incident in question, and the damages and injuries for  which  this lawsuit is maintained by Plaintiff, was proximately caused by the Defendant's failure to provide protective gear, failure to warn and make aware  the plaintiff of the dangerous condition and acid like additives in the cement, and failure to train the plaintiff  on the part of the Defendants named herein.  Plaintiff contends that

---

PLAINTIFF'S ECOND AMENDED PETITION, Page -4

CERTIFIED COPY

nothing he did or failed to do caused or in any way contributed to his injuries and damages on the occasion in question.

## V.

## DEFENDANTS' NEGLIGENCE

15.     Plaintiff contends that on the occasion in question, Defendants acting by and through their agents, servants, employees or representatives, who were at all times acting in the course and scope of their employment, were guilty of negligence toward the Plaintiff in the following respects:

a.     The Defendants were negligent by their own actions increasing the risk of injury to the Plaintiff by failure to provide adequate protective eye lens;

b.     The Defendants were negligent by their own actions increasing the risk of injury to the Plaintiff by failure to warn the Plaintiff of the dangerous substances and/or hazardous chemicals in the cement;

Other further actions and/or acts and/or conducts which amounted to negligence which were engaged in by said Defendants on the occasion in question consisted of the named Defendants failing to:

a.     Hire competent managers and/or supervisors;

b.     In failing to act like a reasonably prudent employer, owner, manager, or supervisor would have acted under the same or similar circumstances.

c.     In failing to provide medical attention to the Plaintiff like a reasonably prudent employer would have done in the same or similar circumstances.

d.     In failing to properly train the plaintiff in the handling of cement which unlike its normal application the cement used on the manner intended by defendants requires the addition of chemicals to promote quick hardening of the cement which said chemicals in combination with cement is extremely dangerous to humans particularly if ingested or splattered in the eyes.

---

CutePDF - www.texisi.com

**CERTIFIED COPY**

## VI.

## RECOVERY SOUGHT BY PLAINTIFF

Plaintiff would show the Court that by reason of each and all of the foregoing acts and omissions of Defendants, he sustained injuries and damages for which he seeks recovery from Defendants, in an amount in excess of the minimum jurisdictional limits of the Court.

Plaintiff seeks recovery for the following:

a.  Damages for Plaintiff's past and present physical pain and suffering;

b.  Damages for physical pain and suffering which in all reasonable probability Plaintiff will experience in the future;

c.  Damages for Plaintiff's past and present mental anguish;

d.  Damages for mental anguish which in all reasonable probability Plaintiff will incur in the future;

e.  Damages for reasonable and necessary medical expenses which Plaintiff has incurred in the past and will incur up to the time of trial;

f.  Damages for medical expenses which in all reasonable probability Plaintiff will incur in the future;

g.  Damages for painful and permanent injury and disability as well as interference in the many activities that depend on vision with consequent loss of employment opportunities;

h.  Damages for future diminished earning power or capacity which in all reasonable probability Plaintiff will suffer in the future;

i.  Damages for harm from loss of sleep;

j.  Damages for past and future impairment of ability to enjoy life;

k.  Damages for humiliation and embarrassment due to the disfiguring eye;

l.  Damages for anxiety and inconvenience resulting from surgical procedures which have left a disfigured eye.

PLAINTIFF'S ECOND AMENDED PETITION, Page -6

CERTIFIED COPY

## VII.
## EXEMPLARY DAMAGES

In doing all the acts herein alleged, Defendants acted wantonly and with malice toward Plaintiff. As a result of such acts of conscious indifference and heedless disregard for the rights, welfare and safety of the Plaintiff. Plaintiff is entitled to an award of exemplary damages as may be determined by the trier of fact and for which he now sues.

## VIII.
## ATTORNEYS' FEES

By reason of the foregoing, Plaintiff has been compelled to engage the services of the undersigned attorney and has obligated himself to pay reasonable and necessary attorney's fees. For such attorney's fees, Plaintiff is entitled to reimbursement for which he sues.

## IX.
## JURY DEMAND

Plaintiff hereby makes a request for a jury trial in this cause pursuant to Rule 216 of the Texas Rules of Civil Procedure and has deposited with the District Clerk of Cameron County, Texas the requisite jury fee of ($22.00) DOLLARS.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that on trial hereof Plaintiff have:

1. Judgment against Defendants, jointly and severally, for a sum in excess of the minimum jurisdictional limits of the Court;

2. Pre-judgment interest as provided by law, at the highest rate until the time of trial;

3. Exemplary damages as may be found by the trier of fact, together with post-judgment interest at the highest legal rate as provided by law, until paid;

CSMPDF - www.fesite.com

**CERTIFIED COPY**

4. Interest on the judgment at the highest legal rate as provided by law until paid;

5. Attorney's fees;

6. Costs of suit;

7. Such other and further relief both in law and in equity to which Plaintiffs may be justly entitled.

Respectfully submitted,

LAW OFFICE OF RAMON GARCIA, P.C.
222 West University
Edinburg, Texas 78539
(956) 383-7441
(956) 381-0825 (Fax)

By: _____
FELIPE GARCIA, JR.

STATE BAR NO: 07633000
ATTORNEY FOR PLAINTIFF

PLAINTIFF'S ECOND AMENDED PETITION, Page -8

**CERTIFIED COPY**

## CERTIFICATE OF SERVICE

I, FELIPE GARCIA, JR., do hereby certify that on the 28th day of August , 2000, a true and correct copy of the above and foregoing PLAINTIFF'S SECOND AMENDED PETITION was sent by Certified Mail, Return Receipt Requested to:

Hon. Javier Gonzalez
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
55 Cove Circle
Brownsville, Texas 78521
(956) 542-4377

FELIPE GARCIA, JR.



A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT CAMERON COUNTY, TEXAS
DATE 01-03-06
BY Danica Ahumada
                    DEPUTY

---

Plaintiff's First Amended Petition

CVISPDF – www.fasiso.com

Case 1:00-cv-00011   Document 13   Filed in TXSD on 01/08/2001   Page 30 of 87

21718\lep\ch

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| ESSEX INSURANCE COMPANY, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-00-011 |
| | § | |
| BURNELL MARINE & SUPPLY, INC.; | § | |
| CHARLES R. BURNELL, Individually | § | |
| and d/b/a BURNELL ENTERPRISES; | § | |
| and CHARLES B. BURNELL, Individually | § | |
| and d/b/a BURNELL ENTERPRISES, | § | |
| | § | |
| **Defendants.** | | |

## AFFIDAVIT OF STEVEN R. SHATTUCK

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

**BEFORE ME,** the undersigned authority, on this day personally appeared **STEVEN R. SHATTUCK**, known to me to be the person whose name is subscribed below, and after being by me duly sworn, deposed and stated on his oath as follows:

1.     "My name is Steven R. Shattuck." I am over the age of twenty-one (21) years and fully competent to make this affidavit. The facts stated herein are within my personal knowledge and are true and correct.

2.     "I am the attorney of records for Essex Insurance Company ("Essex"), Plaintiff in the above-styled and numbered cause. Attached hereto as Exhibits B-1 and B-2, and incorporated herein by reference for all purposes, are true and correct copies of the following documents which were served on or by me in this cause:

   a.     Letter from Javier Gonzalez dated September 1, 2000 (without enclosures), forwarding Plaintiff's Second Amended Petition filed in the underlying personal injury suit (Exhibit B1); and

**Affidavit of Steven R. Shattuck**                                                        **Page 1**
Coverage Library 4468.1

b.      Reservation of rights letter dated October 12, 2000, issued by me on behalf of Essex (Exhibit B2).

    3.      Exhibit "E" to Plaintiff's Motion for Partial Summary Judgment is a true and correct copy of the insurance policy attached to Plaintiff's Complaint for Declaratory Relief as Exhibit "B."

STEVEN R. SHATTUCK

**BEFORE ME**, the undersigned notary public, on this day personally appeared **STEVEN R. SHATTUCK**, known to me (or proved to me on the oath of _____ or through _____ (description of identity card or other document) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

    Given under my hand and seal of office this ___5th___ day of ___January___, 2001.

CATHARINE CLENDENING
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 4-29-2003

Notary Public in and for
the State of Texas

CIAPDF – www.fastio.com

# ROYS N, RAYZOR, VICKERY & WIL IS, L.L.P.
## ATTORNEYS AT LAW

HOUSTON, TEXAS
TELEPHONE 713-224-8380
FACSIMILE 713-225-9945

GALVESTON, TEXAS
TELEPHONE 409-763-1623
FACSIMILE 409-763-3853

CORPUS CHRISTI
TELEPHONE 361-884-8808
FACSIMILE 361-884-7261

55 COVE CIRCLE
BROWNSVILLE, TEXAS 78521
TELEPHONE 956-542-4377
FACSIMILE 956-542-4370
INTERNET royston@roystonlaw.com

ROYSTON, RAYZOR, VICKERY,
NOVAK & DRUCE, L.L.P.
SAN ANTONIO, TEXAS
TELEPHONE 210-228-0655
FACSIMILE 210-228-0839

ROYSTON, RAYZOR, VICKERY,
NOVAK & DRUCE, L.L.P.
LUBBOCK, TEXAS
TELEPHONE 806-763-9252
FACSIMILE 806-763-9254
(BY APPOINTMENT ONLY)

*Javier González*
javier.gonzalez@roystonlaw.com

September 1, 2000

*BY CERTIFIED MAIL, RRR and*
*U.S. MAIL, POSTAGE PREPAID*

Mr. Howard Ellis
Senior Claims Examiner
ESSEX INSURANCE COMPANY
4551 Cox Road
Glen Allen, VA 23060-3382

*PERSONAL & CONFIDENTIAL*



|      |             |                                |
|------|-------------|--------------------------------|
| RE:  | Claim No. : | 66199HE                        |
|      | Insured     | : Burnell Marine & Supply, Inc. |
|      | Claimant    | : Ramon Guzman                 |
|      | D/Loss      | : 05/04/98                     |
|      | Police No.  | : 3CA8694                      |
|      | Our File    | : 46,678                       |

Dear Mr. Ellis:

Enclosed please find a copy of Plaintiff, Ramon Guzman's Second Amended Petition in Cause No. 99-04-01950-E styled *Ramon Guzman v. Charles Burnell, et al,* pending in the 357th Judicial District Court of Cameron County, Texas. The amended petition contains new allegations that at the time, claimant was working for an independent contractor, a new defendant, Adan Lopez, to the suit. Pursuant to the "eight corners" doctrine, in *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex. 1973), Charles B. Burnell, Charles R. Burnell, Burnell Marine & Supply, Inc. and Swamp Irish, Inc. are all asking a defense and indemnity from Essex Insurance Company

Mr. Howard Ellis                                                                                      Page 2
September 1, 2000

for the claims asserted in Plaintiff's Second Amended Petition.  It appears that the claims asserted
by plaintiff in this case do trigger insurance coverage.  Be advised that if you defend the case
pursuant to a reservation of rights, your insureds are permitted to select their own defense counsel,
this firm.  *Steel Erection Co. v. Travelers Indemnity Co.*, 392 S.W.2d 713, 716 (Tex.App.-San
Antonio 1965, writ ref'd n.r.e.).

By copy of this letter, we are advising your coverage counsel of this recent filing and would
ask that at your earliest convenience, you acknowledge receipt of our request for defense and
indemnity in writing.

Very truly yours,

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

By: _____
                Javier González

JG:rs

cc:     James E. Capt. & Associates
        P. O. Box 126
        San Juan, Texas 78589
        *(w/Enclosure)
        VIA REGULAR U. S. MAIL

cc:     Lindsey Morden Claims
        The 700 Building
        700 Paredes Blvd., Suite 206
        Brownsville, Texas 78521
        *(w/Enclosure)
        VIA REGULAR U. S. MAIL

cc:     Mr. Mario Martinez
        CUNNINGHAM & LINDSEY
        704 N. McColl
        McAllen, Texas 78501
        (Your File No. 403118000528)
        *(w/Enclosure)
        VIA REGULAR U. S. MAIL

Mr. Howard Ellis                                                                    Page 3
September 1, 2000


cc:    Hon. Steven R. Shattuck
       FANNING, HARPER & MARTINSON
       Preston Commons West
       8117 Preston Road, 3rd Floor
       Dallas, Texas 75225
       (Your File No. 21718/913)
       *(w/Enclosure)
       **VIA REGULAR U. S. MAIL**

cc:    Hon. Patrick Russell
       RUSSELL & ALEGRIA, P.C.
       37 West Elizabeth Street
       Brownsville, Texas 78520-5545
       (Your File No. 98-162)
       *(w/Enclosure)
       **VIA REGULAR U. S. MAIL**

cc:    Mr. Charles B. Burnell
       BURNELL MARINE & SUPPLY, INC.
       HC 70 Box 58
       Brownsville, Texas 78521
       *(w/Enclosure)
       **VIA REGULAR U. S. MAIL**

46678:935142.1:090100

ANNING, HARPER & MARTINSⅬ.

ATTORNEYS AND COUNSELORS

THIRD FLOOR PRESTON COMMONS WEST

8117 PRESTON ROAD

DALLAS, TEXAS 75225

FORT WORTH/METRO 972 263-6135                    214 369-1300                    FAX: 214 987-9649

October 12, 2000

**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
**AND REGULAR MAIL**
Charles B. Burnell and
Charles R. Burnell
Burnell Marine & Supply, Inc.
c/o Patrick Russell, Esq.
37 West Elizabeth Street
Brownsville, Texas  78520-5545



Re:   Claim No.    66199HE
      Insured:     Burnell Marine & Supply, Inc.
      Claimant:    Raymond Guzman
      Date/Loss:   5/4/98

Dear Mr. Burnell:

Essex Insurance Company (hereafter "Essex") has received and reviewed Plaintiff's Fourth Amended Petition, incorrectly identified as the Second Amended Petition, in the following personal injury action:

> Cause No. 99-04-1950-E; *Ramon Guzman v. Charles B. Burnell, Individually and d/b/a Burnell Enterprises; Charles R. Burnell, Individually and d/b/a Burnell Enterprises; Burnell Marine & Supply, Inc. and Swamp Irish, Inc.*, in the 357th Judicial District Court, Cameron County, Texas (hereafter "Lawsuit").

Please be advised that Essex has considered the new allegations to the suit, and for the reasons set forth below, Essex agrees to participate in the defense of Charles B. Burnell, Charles R. Burnell and Burnell Marine Supply, Inc. but reserves any and all rights under the policy in question, including the right to subsequently deny coverage and indemnity and the right to withdraw from the defense if the allegations change.

As you know, the lawsuits arise out of the personal injuries Plaintiff claims to have incurred while working as a "temporary day laborer" for Burnell Marine & Supply, Inc. and/or Charles B. Burnell, shoveling cement into buckets for dumping into the hull of a shrimp boat owned by Swamp Irish, Inc.  Specifically, Plaintiff claims to have been splattered with cement while working for the Burnell Marine & Supply, Inc., resulting in the loss of his right eye.

A PROFESSIONAL CORPORATION

October 12, 2000
Page 2

Plaintiff claims the injury was a direct and proximate result of Defendants' individual and/or collective negligence in failing to supply him with appropriate protective gear; warn him of the potential dangers associated with the subject "bilging" activities; and/or properly hire, train or supervise its employees with regard to such operations. Plaintiff has added a new, alternative allegation that asserts that he was employed by new defendant, Adan Lopez, as an independent contractor.

At all times relevant to Mr. Guzman's alleged injuries, Burnell Marine & Supply, Inc. was the Named Insured under a Commercial General Liability Insurance Policy issued by Essex, numbered 3CA 8694, effective March 13, 1998 through March 13, 1999 ("Policy"), containing "Bodily Injury and Property Damage Liability" coverage in the amount of $1,000,000 each occurrence, and $2,000,000 in the aggregate.

As pertinent to this claim, the Policy obligates Essex to pay sums an "insured" becomes legally obligated to pay as damages because of "bodily injury" or "property damage" caused by an "occurrence" to which the insurance otherwise applies. As previously stated, it is Essex' position that the claims presently asserted in the Lawsuit may not fall within the terms and provisions of such coverage.

In this regard, Section I, Coverage Part A of the Policy provides the following "Bodily Injury and Property Damage Liability" coverage":

## SECTION I. COVERAGES
## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.    **Insuring Agreement**

        a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .

\*   \*   \*

To assist in the interpretation and application of the above coverage provisions, the Policy includes the following relevant "Definitions":

## SECTION V - DEFINITIONS

\*   \*   \*

October 12, 2000
Page 3

    **3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

*   *   *

    **12.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*   *   *

In addition, the Policy defines the word "insured" to mean "any person or organization qualifying as such under" the Policy's "Who Is an Insured" provisions. Specifically, Section II of the Policy provides the following, in relevant part:

## SECTION II.   WHO IS AN INSURED

    **1.**    If you are designated in the Declarations as:

*   *   *

    **c.**    An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insured, but only with respect to their liability as stockholders.

    **2.**    Each of the following is also an insured:

    **a.**    Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

    **(1)**    "Bodily injury" or "property damage":

    **a.**    To you, to your partners or members. . .or to a co-"employee" while in the course of his or her employment or

October 12, 2000
Page 4

> while performing duties related to the
> conduct of your business. . . .

> \*   \*   \*

For purposes of applying the above Policy provisions, Section IV - DEFINITIONS provides:

> \*   \*   \*

> 5.   "Employee" includes a "leased worker". "Employee"
>      does not include a "temporary worker".[1]

> \*   \*   \*

Based on such provisions, Swamp Irish, Inc. does not qualify as an "insured" under the Policy, and as a result, is not entitled to any coverage for the claims asserted against it in the subject Lawsuits. In addition, to the extent Defendants Charles R. Burnell and/or Charles B. Burnell were engaged in some business other than that of the Named Insured's on the date in question, and/or Plaintiff was working as the Named Insured's "employee" at the time of his injuries, they too fail to qualify as "insureds" under the Policy.

Whether or not Defendants Charles B. Burnell and/or Charles R. Burnell potentially qualify as "insureds" under the Policy, it is Essex' position that coverage may be precluded for all of the claims presently asserted against Defendants in the Lawsuit under one or more of the following exclusionary provisions and/or amendatory endorsements.

First, all of Plaintiffs allegations against Defendants arise out of the subject boat "bilging" operations. As a result, we direct your attention to Exclusion 2.g of the Policy entitled "**Aircraft, Auto or Watercraft**," providing that the insurance does not apply to the following, in relevant part:

> \*   \*   \*

> "Bodily injury" or "property damage" arising out of
> the ownership, maintenance, use or entrustment to
> others of any aircraft, "auto" or watercraft owned or
> operated by or rented or loaned to *any* insured. Use
> includes operation and "loading or unloading."

---

[1]As will be shown below, the "employee" definition has been altered to *include* temporary workers for purposes of applying the Policy's amended "Employer's Liability" Exclusion. *See* Policy, Combination Endorsement M/E-001. The amendment is limited, however, to that exclusion, and as a result, would not have any effect on the Policy's "Who Is An Insured" provisions.

October 12, 2000
Page 5

This exclusion does not apply to:

(1)     A watercraft while ashore on premises *you* own or rent;

(2)     A watercraft *you* do not own that is:

    (a)     Less than 26 feet long; and

    (b)     Not being used to carry persons or property for a charge.

                    *   *   *

Second, Plaintiff claims to have been working for Burnell Marine & Supply, Inc. and/or one of the Burnells (Charles B. or Charles R.) at the time of the incident. In this regard, we note that the Policy contains an attached Mandatory Endorsement entitled **"Combination Endorsement M/E-001,"** providing the following:

                    *   *   *

5.     **EMPLOYER'S LIABILITY EXCLUSION AMENDED:**

Employer's Liability under 2.e. Exclusions, Commercial General Liability Coverage form, Section I. - Coverage, is replaced by the following and applies throughout this policy:

*This insurance does not apply to any claim, suit, cost or expense arising out of "bodily injury" to*

    *(1)     any employee of the Named Insured arising out of and in the course of employment by an Insured, or while performing duties related to the conduct of the Insured's business*, or

    (2)     the spouse, child, parent, brother, sister or relative of that employee as a consequence of (1).

October 12, 2000
Page 6

This exclusion applies whether an Insured may be liable as an employer or in any other capacity, and/or to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any "Insured Contract."

Wherever the word employee appears above, it shall also mean any member, associate, leased worker, *temporary worker* of, or any person or persons loaned to or volunteering services to you. This exclusion applies to the entire policy, and where there is no coverage there is no duty to defend.

\*   \*   \*

In addition, the Mandatory Endorsement contains a number of additional exclusionary provisions which may also apply to further preclude coverage in the present case, either in whole or in part. Specifically, Combination Endorsement M/E-001 provides that it "does not apply to any claim, suit, cost or expense arising out of":

\*   \*   \*

C.    PUNITIVE OR EXEMPLARY DAMAGES

Punitive or Exemplary Damages whether arising out of the acts of any insured, any employee of any insured or any other person.

\*   \*   \*

E.    HIRING AND/OR SUPERVISION:

Charges or allegations of negligent hiring, training, placement or supervision.

\*   \*   \*

Finally, to the extent Plaintiff may be later alleged or found to have been working as or for an independent contractor or subcontractor of the Named Insured, Combination Endorsement M/E-001 precludes coverage for:

\*   \*   \*

October 12, 2000
Page 7

    **K.**    **INDEPENDENT CONTRACTORS\SUBCONTRACTORS - CONDITIONAL**

    (1)    "Bodily injury," "personal injury" or "property damage" caused by acts of independent Contractors/Subcontractors contracted *by you or on your behalf* unless you obtain Certificates of Insurance from them providing evidence of like coverage and limits as provided by this policy;

    (2)    Nor does this insurance apply to "bodily injury," "personal injury" or "property damage" sustained by any independent contractor/subcontractor, or any employee, leased worker, temporary or volunteer help of any independent contractor/subcontractor, unless the Named Insured is on site, directly supervising the work of the independent contractor/subcontractor at the time of the injury or damage, and the Named Insured's actions, inactions or omissions are the direct cause of the injury or damage, or (b) the injury or damage, is directly caused by an employee of a Named Insured.

\*   \*   \*

Please be advise that Essex remains willing and ready to discuss any of the coverage matters set forth above with you, Burnell Marine & Supply, Inc. and/or any attorney retained thereby, as Essex' present position is based solely upon the facts presently known to it and the allegations presently asserted by Plaintiff's pleadings in the Lawsuit. Essex agrees to continue using attorney Javier Gonzalez of the law firm of Royston, Rayzor, Vickery & Williams at the rate they are currently charging for the defense and Essex will pay all defense fees and costs incurred after the September 1, 2000 tender of the Second Amended Petition.

Although Essex is willing to maintain a continuing dialogue with you, Burnell Marine & Supply, Inc. and/or your attorney(s), and will certainly consider and evaluate any additional information which might be presented in this case, it should be recognized that such ongoing communications will be without prejudice to Essex' position as outlined herein.

Therefore, neither this letter nor the performance by Essex under its terms shall operate as a waiver or modification of any terms, conditions, limitations, exclusions, monetary limits, deductibles, retentions, or other provisions of the Policy issued by Essex to Burnell Marine & Supply, Inc. during the relevant coverage period. Likewise, Essex does not waive any of its rights or admit any obligation to said insured in the above-captioned claim under the Policy.

October 12, 2000
Page 8


     Upon your receipt of this letter, should you or any attorney retained by you be uncertain as to the substance of this or any other correspondence, please contact the undersigned immediately. If no such contact is made, Essex shall assume that you, Burnell Marine & Supply, Inc. and/or your attorney(s) have a complete understanding as to the basis for this coverage denial.

                    Very truly yours,

                    STEVEN R. SHATTUCK

SRS/ch

cc:     (via regular mail)
James E. Capt. & Associates
P.O. Box 126
San Juan, Texas  78589

Mr. Javier Gonzalez
Royston, Rayzor, Vickery & Williams, L.L.P.
55 Cove Circle
Brownsville, Texas 78521

**U.S. Postal Service**

## CERTIFIED MAIL RECEIPT

*(Domestic Mail Only; No Insurance Coverage Provided)*

7000 0520 0019 1270 8518

| | | |
|---|---|---|
| Postage | $ | |
| Certified Fee | | Postmark Here |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Recipient's Name *(Please Print Clearly) (To be completed by mailer)*
Charles B. Charles R. Burwell, Burwell

Street, Apt. No.; or PO Box No.
Marine & Supply,   37 West Elizabeth St.

City, State, ZIP+4
Brownsville TX 78520-5545

See Reverse for Instructions

PS Form 3800, February 2000

---

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

3. Article Addressed to:
Charles R. Burwell +
Charles B. Burwell-Burwell
Marine + Supply, Inc.
C/o Patrick Russell
37 West Elizabeth Street
Brownsville, Texas 78520-5545

4a. Article Number
7000 0520 0019 1270 8518

4b. Service Type
☐ Registered        ☐ Certified
☐ Express Mail      ☐ Insured
☐ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery

5. Received By: (Print Name)
Maggie Zapa

8. Addressee's Address *(Only if requested and fee is paid)*

6. Signature (Addressee or Agent)

Is your RETURN ADDRESS completed on the reverse side?

Thank you for using Return Receipt Service.

PS Form 3811, December 1994         102595-99-B-0223         Domestic Return Receipt

CVISPDF – www.fevisio.com

**CERTIFIED COPY**

Cause No.: <u>99-04-01950-E</u>

| | | |
|---|---|---|
| RAMON GUZMAN,<br>*Plaintiff* | §<br>§<br>§ | IN THE JUDICIAL DISTRICT |
| VS. | §<br>§<br>§ | CAMERON, COUNTY, TEXAS |
| CHARLES B. BURNELL,<br>INDIVIDUALLY AND D/B/A<br>BURNELL ENTERPRISES;<br>CHARLES R. BURNELL,<br>INDIVIDUALLY AND D/B/A<br>BURNELL ENTERPRISES;<br>BURNELL MARINE & SUPPLY,<br>INC.; SWAMP IRISH, INC.;<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 357th DISTRICT COURT |

FILED _____ O'CLOCK ____ M
AURORA DE LA GARZA DIST. CLERK
AUG 24 1999
DISTRICT COURT OF CAMERON COUNTY, TEXAS

## <u>PLAINTIFF'S THIRD AMENDED PETITION</u>

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Plaintiff RAMON GUZMAN, Individually, (hereinafter referred to herein for all purposes collectively as "Plaintiff"), complaining of Defendants CHARLES B. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES; CHARLES R. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES; BURNELL MARINE & SUPPLY, INC.; SWAMP IRISH, INC.; (hereinafter referred to herein for all purposes collectively as "Defendants") and for cause of action would respectfully show the Court the following:

### I.
### <u>DISCOVERY CONTROL PLAN</u>

This matter shall be governed by Level 2 of the Discovery Control Plan in accordance with Rule 190 of the Texas Rules of Civil Procedure.

### II.
### <u>PARTIES</u>

a.   Plaintiff **RAMON GUZMAN** is a resident of Brownsville, Cameron County, Texas.

---

PLAINTIFF'S THIRD AMENDED PETITION, Page -1

CERTIFIED COPY

b.  Defendant **CHARLES B. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES** may be served with citation at **HC 70, Box 58, Brownsville, Texas 78521.** Service of citation will be issued by a private processor, pursuant to Rules 103 and 106(3)(a) of the Texas Rules of Civil Procedure.

c.  Defendant **CHARLES R. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES** may be served with citation at **HC 70, Box 58, Brownsville, Texas 78521.** Service of citation will be issued by a private processor, pursuant to Rules 103 and 106(3)(a) of the Texas Rules of Civil Procedure.

d.  Defendant **BURNELL MARINE & SUPPLY, INC.** is a Texas Corporation duly formed and existing under the laws of the State of Texas and may be served with citation by serving its Registered Agent, Mr. Charles Burnell at **HC 70, Box 58, Brownsville, Texas 78521.** Service of citation will be issued by a private processor, pursuant to Rules 103 and 106(3)(a) of the Texas Rules of Civil Procedure.

e.  Defendant **SWAMP IRISH, INC.,** is a Texas Corporation duly formed and existing under the laws of the State of Texas and has already been served with citation by serving its Registered Agent, Mr. Robert J. Hymer at Starr Route Box 5, Brownsville, Texas 78520. Service of citation is not necessary on this Defendant by Certified Mail, Return Receipt Request, pursuant to Rule 106(3)(a) of the Texas Rules of Civil Procedure.

## III.
## JURISDICTION AND VENUE

1.  This Court has jurisdiction of this matter in that the amount in controversy is within the jurisdictional requirements of this Court, and all parties are subject to this Court's jurisdiction by reason of their residence in Cameron County, Texas.

2.  Venue of this proceeding is proper in Cameron County, Texas pursuant to Texas Civil Practice and Remedies Code Sections 15.002 and 15.005. All or a substantial part of the events and/or omissions giving rise to the claims herein occurred in Cameron County. Furthermore, Plaintiff was a resident of Cameron County, Texas at the time the cause of action accrued. Defendants also reside and do business in Cameron County, Texas.

**CERTIFIED COPY**

## IV.

## FACTS

3.      On or about April 22, 1998, Plaintiff Ramon Guzman was hired by Burnell Marine and Supply, Inc., at the Brownsville Shrimp Turning Basin in Cameron County, Texas to perform cement work.  The Plaintiff more specifically was  hired by Defendant Charles R. Burnell on behalf of his father Charles B. Burnell as a temporary day laborer.  He was hired along with many other men to shovel cement into 5 gallon buckets and dump these buckets into the hull of a shrimp boat, named the "Success", which is owned by Charles B. Burnell, who is president of a  Texas Corporation, Swamp Irish, Inc., which owns this shrimp boat.  The purpose of this cement was to act as ballast for the boat.

4.      As the Plaintiff was shovelling the cement into buckets, some of the cement splattered into his right eye causing him great pain, anguish, total loss of vision in his right eye and subsequent loss of his right eye which has been replaced with a glass eye.

5.      At the time of the incident in question, the Plaintiff complained of pain to Defendant CHARLES R. BURNELL, his immediate supervisor on board the shrimp boat but no assistance or offer of medical care was provided.

6.      The incident in question, and the damages and injuries for  which   this lawsuit is maintained  by  Plaintiff,  was proximately caused  by the Defendant's failure to provide protective gear, failure to warn and make aware  the plaintiff of the dangerous condition and acid like additives in the cement, and failure to train the plaintiff  on the part of the Defendants named herein.  Plaintiff contends that nothing  he  did or failed to do caused or in any way contributed to his injuries and damages on the occasion in question.

## V.

## DEFENDANTS' NEGLIGENCE

7.      Plaintiff contends that on the occasion in question, Defendants acting by and through their agents, servants, employees or representatives, who were at all times acting in the course and scope of their employment, were guilty of negligence toward the Plaintiff in the following respects:

---

**CERTIFIED COPY**

a.   The Defendants were negligent by their own actions increasing the risk of injury to the Plaintiff by failure to provide adequate protective eye lens;

b.   The Defendants were negligent by their own actions increasing the risk of injury to the Plaintiff by failure to warn the Plaintiff of the dangerous substances and/or hazardous chemicals in the cement;

Other further actions and/or acts and/or conducts which amounted to negligence which were engaged in by said Defendants on the occasion in question consisted of the named Defendants failing to:

a.   Hire competent managers and/or supervisors;

b.   In failing to act like a reasonably prudent employer, owner, manager, or supervisor would have acted under the same or similar circumstances.

c.   In failing to provide medical attention to the Plaintiff like a reasonably prudent employer would have done in the same or similar circumstances.

d.   In failing to properly train the plaintiff in the handling of cement which unlike its normal application the cement used on the manner intended by defendants requires the addition of chemicals to promote quick hardening of the cement which said chemicals in combination with cement is extremely dangerous to humans particularly if ingested or splattered in the eyes.

## VI.

## RECOVERY SOUGHT BY PLAINTIFF

Plaintiff would show the Court that by reason of each and all of the foregoing acts and omissions of Defendants, he sustained injuries and damages for which he seeks recovery from Defendants, in an amount in excess of the minimum jurisdictional limits of the Court.

Plaintiff seeks recovery for the following:

a.   Damages for Plaintiff's past and present physical pain and suffering;

b.   Damages for physical pain and suffering which in all reasonable probability Plaintiff will experience in the future;

c.   Damages for Plaintiff's past and present mental anguish;

CERTIFIED COPY

d.  Damages for mental anguish which in all reasonable probability Plaintiff will incur in the future;

e.  Damages for reasonable and necessary medical expenses which Plaintiff has incurred in the past and will incur up to the time of trial;

f.  Damages for medical expenses which in all reasonable probability Plaintiff will incur in the future;

g.  Damages for painful and permanent injury and disability as well as interference in the many activities that depend on vision with consequent loss of employment opportunities;

h.  Damages for future diminished earning power or capacity which in all reasonable probability Plaintiff will suffer in the future;

i.  Damages for harm from loss of sleep;

j.  Damages for past and future impairment of ability to enjoy life;

k.  Damages for humiliation and embarrassment due to the disfiguring eye;

l.  Damages for anxiety and inconvenience resulting from surgical procedures which have left a disfigured eye.

## VII.
## EXEMPLARY DAMAGES

In doing all the acts herein alleged, Defendants acted wantonly and with malice toward Plaintiff. As a result of such acts of conscious indifference and heedless disregard for the rights, welfare and safety of the Plaintiff. Plaintiff is entitled to an award of exemplary damages as may be determined by the trier of fact and for which he now sues.

## VIII.
## ATTORNEYS' FEES

By reason of the foregoing, Plaintiff has been compelled to engage the services of the undersigned attorney and has obligated himself to pay reasonable and necessary attorney's fees. For such attorney's fees, Plaintiff is entitled to reimbursement for which he sues.

**CERTIFIED** COPY

## IX.
## JURY DEMAND

Plaintiff hereby makes a request for a jury trial in this cause pursuant to Rule 216 of the Texas Rules of Civil Procedure and has deposited with the District Clerk of Cameron County, Texas the requisite jury fee of ($22.00) DOLLARS.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that on trial hereof Plaintiff have:

1.  Judgment against Defendants, jointly and severally, for a sum in excess of the minimum jurisdictional limits of the Court;

2.  Pre-judgment interest as provided by law, at the highest rate until the time of trial;

3.  Exemplary damages as may be found by the trier of fact, together with post-judgment interest at the highest legal rate as provided by law, until paid;

4.  Interest on the judgment at the highest legal rate as provided by law until paid;

5.  Attorney's fees;

6.  Costs of suit;

7.  Such other and further relief both in law and in equity to which Plaintiffs may be justly entitled.

Respectfully submitted,

LAW OFFICE OF RAMON GARCIA, P.C.
222 West University
Edinburg, Texas 78539
(956) 383-7441
(956) 381-0825 (Fax)

By: _____
FELIPE GARCIA, JR.
STATE BAR NO: 07633000
ATTORNEY FOR PLAINTIFF

PLAINTIFF'S THIRD AMENDED PETITION, Page -6

**CERTIFIED COPY**

## CERTIFICATE OF SERVICE

I, FELIPE GARCIA, JR., do hereby certify that on the ⟨24th⟩ day of August , 1999, a true and correct copy of the above and foregoing PLAINTIFF'S THIRD AMENDED PETITION was sent by Certified Mail, Return Receipt Requested to:

> Hon. Patrick Russell
> Russell and Allegria
> 37 W. Elizabeth St.
> Brownsville, Texas 78520

FELIPE GARCIA, JR.



A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT, CAMERON COUNTY, TEXAS
DATE: 01-05-01
BY _____ DEPUTY

---

**Plaintiff's First Amended Petition**

CVISPDF – www.fenlos.com

Case 1:00-cv-00011   Document 13   Filed in TXSD on 01/08/2001   Page 55 of 87

**CERTIFIED COPY**

Cause No.: 99-04-1950-E

| | | |
|---|---|---|
| RAMON GUZMAN,<br>*Plaintiff* | § <br> § <br> § | IN THE JUDICIAL DISTRICT |
| VS. | § <br> § | CAMERON, COUNTY, TEXAS |
| CHARLES B. BURNELL,<br>INDIVIDUALLY AND D/B/A<br>BURNELL ENTERPRISES;<br>CHARLES R. BURNELL,<br>INDIVIDUALLY AND D/B/A<br>BURNELL ENTERPRISES;<br>BURNELL MARINE & SUPPLY,<br>INC.; SWAMP IRISH, INC.;<br>*Defendants* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | |

FILED 10:00 O'CLOCK __ o __ M
AURORA DE LA GARZA DIST. CLERK

APR 2 2 1999

DISTRICT COURT OF CAMERON COUNTY, TEXAS
R. Sotelo ___DEPUTY

357th _____ DISTRICT COURT

### PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, Plaintiff RAMON GUZMAN, Individually, (hereinafter referred to herein for all purposes collectively as "Plaintiff"), complaining of Defendants CHARLES B. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES; CHARLES R. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES; BURNELL MARINE & SUPPLY, INC.; SWAMP IRISH, INC.; (hereinafter referred to herein for all purposes collectively as "Defendants") and for cause of action would respectfully show the Court the following:

### I.
### DISCOVERY CONTROL PLAN

This matter shall be governed by Level 2 of the Discovery Control Plan in accordance with Rule 190 of the Texas Rules of Civil Procedure.

### II.
### PARTIES

a.  Plaintiff **RAMON GUZMAN** is a resident of Brownsville, Cameron County, Texas.

**CERTIFIED COPY**

b.    Defendant **CHARLES B. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES** may be served with citation at Starr Route Box 58, Brownsville, Texas 78520. Service of citation is requested on this Defendant by Certified Mail, Return Receipt Request, pursuant to Rule 106(3)(a) of the Texas Rules of Civil Procedure.

c.    Defendant **CHARLES R. BURNELL, INDIVIDUALLY AND D/B/A BURNELL ENTERPRISES** may be served with citation at Starr Route Box 58, Brownsville, Texas 78520. Service of citation is requested on this Defendant by Certified Mail, Return Receipt Request, pursuant to Rule 106(3)(a) of the Texas Rules of Civil Procedure.

d.    Defendant **BURNELL MARINE & SUPPLY, INC.** is a Texas Corporation duly formed and existing under the laws of the State of Texas and may be served with citation by serving its Registered Agent, Mr. Charles Burnell at Starr Route Box 58, Brownsville, Texas 78520. Service of citation is requested on this Defendant by Certified Mail, Return Receipt Request, pursuant to Rule 106(3)(a) of the Texas Rules of Civil Procedure.

e.    Defendant **SWAMP IRISH, INC.,** is a Texas Corporation duly formed and existing under the laws of the State of Texas and may be served with citation by serving its Registered Agent, Mr. Robert J. Hymer at Starr Route Box 5, Brownsville, Texas 78520. Service of citation is requested on this Defendant by Certified Mail, Return Receipt Request, pursuant to Rule 106(3)(a) of the Texas Rules of Civil Procedure.

## III.
## JURISDICTION AND VENUE

1.    This Court has jurisdiction of this matter in that the amount in controversy is within the jurisdictional requirements of this Court, and all parties are subject to this Court's jurisdiction by reason of their residence in Cameron County, Texas.

2.    Venue of this proceeding is proper in Cameron County, Texas pursuant to Texas Civil Practice and Remedies Code Sections 15.002 and 15.005. All or a substantial part of the events and/or omissions giving rise to the claims herein occurred in Cameron County. Furthermore, Plaintiff was a resident of Cameron County, Texas at the time the cause of action accrued. Defendants also reside and do business in Cameron County, Texas.

**CERTIFIED COPY**

## IV.

## FACTS

3.  On or about April 22, 1998, Plaintiff Ramon Guzman was hired by Burnell Marine and Supply, Inc., at the Brownsville Shrimp Turning Basin in Cameron County, Texas to perform cement work. The Plaintiff more specifically was hired by Defendant Charles R. Burnell on behalf of his father Charles B. Burnell as a temporary day laborer. He was hired along with many other men to shovel cement into 5 gallon buckets and dump these buckets into the hull of a shrimp boat, named the "Success", which is owned by Charles B. Burnell, who is president of a Texas Corporation, Swamp Irish, Inc., which owns this shrimp boat. The purpose of this cement was to act as ballast for the boat.

4.  As the Plaintiff was shovelling the cement into buckets, some of the cement splattered into his right eye causing him great pain, anguish, total loss of vision in his right eye and subsequent loss of his right eye which has been replaced with a glass eye.

5.  At the time of the incident in question, the Plaintiff complained of pain to Defendant CHARLES R. BURNELL, his immediate supervisor on board the shrimp boat but no assistance or offer of medical care was provided.

6.  The incident in question, and the damages and injuries for which this lawsuit is maintained by Plaintiff, was proximately caused by the Defendant's failure to provide protective gear, failure to warn and make aware the plaintiff of the dangerous condition and acid like additives in the cement, and failure to train the plaintiff on the part of the Defendants named herein. Plaintiff contends that nothing he did or failed to do caused or in any way contributed to his injuries and damages on the occasion in question.

## V.

## DEFENDANTS' NEGLIGENCE

7.  Plaintiff contends that on the occasion in question, Defendants acting by and through their agents, servants, employees or representatives, who were at all times acting in the course and scope of their employment, were guilty of negligence toward the Plaintiff in the following respects:

CERTIFIED COPY

a.  The Defendants were negligent by their own actions increasing the risk of injury to the Plaintiff by failure to provide adequate protective eye lens;

b.  The Defendants were negligent by their own actions increasing the risk of injury to the Plaintiff by failure to warn the Plaintiff of the dangerous substances and/or hazardous chemicals in the cement;

Other further actions and/or acts and/or conducts which amounted to negligence which were engaged in by said Defendants on the occasion in question consisted of the named Defendants failing to:

a.  Hire competent managers and/or supervisors;

b.  In failing to act like a reasonably prudent employer, owner, manager, or supervisor would have acted under the same or similar circumstances.

c.  In failing to provide medical attention to the Plaintiff like a reasonably prudent employer would have done in the same or similar circumstances.

d.  In failing to properly train the plaintiff in the handling of cement which unlike its normal application the cement used on the manner intended by defendants requires the addition of chemicals to promote quick hardening of the cement which said chemicals in combination with cement is extremely dangerous to humans particularly if ingested or splattered in the eyes.

## VI.

## RECOVERY SOUGHT BY PLAINTIFF

Plaintiff would show the Court that by reason of each and all of the foregoing acts and omissions of Defendants, he sustained injuries and damages for which he seeks recovery from Defendants, in an amount in excess of the minimum jurisdictional limits of the Court.

Plaintiff seeks recovery for the following:

a.  Damages for Plaintiff's past and present physical pain and suffering;

b.  Damages for physical pain and suffering which in all reasonable probability Plaintiff will experience in the future;

CERTIFIED COPY

c.     Damages for Plaintiff's past and present mental anguish;

d.     Damages for mental anguish which in all reasonable probability Plaintiff will incur in the future;

e.     Damages for reasonable and necessary medical expenses which Plaintiff has incurred in the past and will incur up to the time of trial;

f.     Damages for medical expenses which in all reasonable probability Plaintiff will incur in the future;

g.     Damages for painful and permanent injury and disability as well as interference in the many activities that depend on vision with consequent loss of employment opportunities;

h.     Damages for future diminished earning power or capacity which in all reasonable probability Plaintiff will suffer in the future;

i.     Damages for harm from loss of sleep;

j.     Damages for past and future impairment of ability to enjoy life;

k.     Damages for humiliation and embarrassment due to the disfiguring eye;

l.     Damages for anxiety and inconvenience resulting from surgical procedures which have left a disfigured eye.

## VII.
## EXEMPLARY DAMAGES

In doing all the acts herein alleged, Defendants acted wantonly and with malice toward Plaintiff.  As a result of such acts of conscious indifference and heedless disregard for the rights, welfare and safety of the Plaintiff.  Plaintiff is entitled to an award of exemplary damages as may be determined by the trier of fact and for which he now sues.

## VIII.
## ATTORNEYS' FEES

By reason of the foregoing, Plaintiff has been compelled to engage the services of the undersigned attorney and has obligated himself to pay reasonable

CERTIFIED COPY

and necessary attorney's fees.  For such attorney's fees, Plaintiff is entitled to reimbursement for which he sues.

## IX.
## JURY DEMAND

Plaintiff hereby makes a request for a jury trial in this cause pursuant to Rule 216 of the Texas Rules of Civil Procedure and has deposited with the District Clerk of Cameron County, Texas the requisite jury fee of ($22.00 ) DOLLARS.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that on trial hereof Plaintiff have:

1.  Judgment against Defendants, jointly and severally, for a sum in excess of the minimum jurisdictional limits of the Court;

2.  Pre-judgment interest as provided by law, at the highest rate until the time of trial;

3.  Exemplary damages as may be found by the trier of fact, together with post-judgment interest at the highest legal rate as provided by law, until paid;

4.  Interest on the judgment at the highest legal rate as provided by law until paid;

5.  Attorney's fees;

6.  Costs of suit;

7.  Such other and further relief both in law and in equity to which Plaintiffs may be justly entitled.

Respectfully submitted,

## CERTIFICATE OF SERVICE

**CERTIFIED COPY**

I, FELIPE GARCIA, JR., do hereby certify that on the 15th day of April, 1999, a true and correct copy of the above and foregoing PLAINTIFF'S ORIGINAL PETITION was sent by Certified Mail, Return Receipt Requested to:

> Hon. Patrick Russell
> Russell and Allegria
> 37 W. Elizabeth St.
> Brownsville, Texas 78520

FELIPE GARCIA, JR.

# CERTIFIED COPY

LAW OFFICE OF RAMON GARCIA, P.C.
222 West University
Edinburg, Texas 78539
(956) 383-7441
(956) 381-0825 (Fax)

By: _____
FELIPE GARCIA, JR.
STATE BAR NO: 07633000

**ATTORNEY FOR PLAINTIFF**



DISTRICT COURT
CAMERON COUNTY, TEXAS

A TRUE COPY I CERTIFY
AURORA DE LA GARZA, CLERK
DISTRICT COURT CAMERON COUNTY, TEXAS
DATE 01-03-01
BY _Dahlie Ahumada_
DEPUTY



ESSEX
INSURANCE
COMPANY

INSURANCE

POLICY

EXHIBIT

"B"

In consideration of the payment of          nium, in reliance upon the statements ma          Company by application and sub-
ject to the terms set forth herein, the Company designated on the Declarations page (A Capital Stock Company), herein called
the Company, AGREES with the Insured:

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed proof of mailing will be sufficient pro-of of notice.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:
1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.
Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.
And we do not warrant that conditions:
1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.
This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.
3. Premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

## F. PREMIUMS, MINIMUM, DEPOSIT AND AUDIT

All references in this policy to minimum and/or deposit premiums and premium audits is replaced by the following, as respects casualty:
Premium shown as advance premium is both a deposit premium and a minimum premium for the policy term. At the close of each audit period we will compute earned premium for that period. If earned is more than advance premium then the amount by which it exceeds advance premium is due and payable on notice to you. If earned is less, advance premium applies as the minimum premium with no return payable to you.

If this policy is cancelled the pro rata or short rate of the minimum and deposit premium will apply for the policy term, subject to an absolute minimum earned premium of 25% of the total advance premium, unless final audit develops greater than said 25%. If your business is a seasonal business, however, the minimum premium then becomes fully earned at the end of your season.

## G. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

This Policy is no     unless a Declarations Page and Cove.     'm is attached.

## NUCLEAR ENERGY LIABILITY EXCLUSION

**1. The insurance does not apply:**

A. Under any Liability Coverage, to "bodily injury" or "property damage:"

(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses Incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste " at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, Parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

**2. As used in this endorsement**

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "Special nuclear material" or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:
(a) Any "nuclear reactor;"
(b) Any building, premises or property owned, leased, loaned or used by or on behalf of the insured where 'hazardous properties', 'nuclear material' or radioactive material is used, processed or stored or has been discharged or dispersed therefrom;
(c) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste;"
(d) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
(e) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;" and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

# SERVICE OF SUIT

It is agreed that in the event of the failure of this Company herein to pay any amount claimed to be due hereunder, this Company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the Company's President, or his nominee, at 4551 Cox Road, Glen Allen, VA 23060-4901 and that in any suit instituted against any one of them upon this Policy, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any state, territory or district of the United States of America, which makes provision therefor, this Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

*Secretary*                                          *President*

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc 1982, 1983



# ESSEX INSURANCE COMPANY
MARKEL



## COMMERCIAL LIABILITY DECLARATIONS

3CA 8615
_____
**Renewal of Number**

**POLICY NUMBER**
3CA 8694

**Item 1. Named Insured and Mailing Address:**
BURNELL MARINE & SUPPLY, INC.
HC 70 BOX 58
BROWNSVILLE, TX. 78521

| Item 2.  Policy Period   From: 03/13/98 | To: 03/13/99 | Term: ANNUAL |
|---|---|---|

12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

**Item 3.**  Retroactive Date: NONE

**Item 4.**  Business Description: REPAIR OF OWNED NETS & BOATS

**Item 5.**  In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Form No. and Edition Date | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | | $800.00 |
| Professional Liability Coverage Part | | $ |
| | | $ |
| POLICY FEE | | $100.00 |
| STATE TAX | | $43.65 |
| STAMPING FEE | | $1.35 |
| | | $ |
| | | $ |
| Audit Period Annual unless otherwise stated: | Total | $945.00 |

**Item 6.**   Forms and endorsements applicable to all Coverage Parts: CG0001(10-93), ME-001(4-95), ME-009(3-95),
SHOW NUMBERS
ME-048(6-96), ME-173(8-95),

011-1054(12/96),

Agent Name and Address: RAMSGATE MANAGING INSURANCE, SAN ANTONIO, TX.
Agent Number: 101430

Countersigned  03-19-98  LM        By _____
             **DATE**

THIS COMMERCIAL LIABILITY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS,TOGETHER WITH THE COMMON POLICY CONDITIONS,
COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

COMPANY

# ESSEX INSURANCE COMPANY

**MARKEL**

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number __3CA 8694__

## LIMITS OF INSURANCE

General Aggregate Limit (other than Products/Completed Operations) $ __2,000,000.00__

Products/Completed Operations Aggregate Limit      $ __EXCLUDED__

Personal and Advertising Injury Limit      $ __1,000,000.00__

Each Occurrence Limit      $ __1,000,000.00__

Fire Damage Limit      $ __50,000.00__    any one fire

Medical Expense Limit      $ __EXCLUDED__    any one person

## BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of business:

☐ Individual    ☐ Joint Venture    ☐ Partnership    ☒ Organization (other than Partnership or Joint Venture)

Location of all premises you own, rent or occupy:

FISHERMAN'S ROAD, SHRIMP TURNING BASIN

BROWNSVILLE, TX. 78521

## PREMIUM

| Classification | Code No. | *Premium Basis | Rate PR/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| BUILDING OR PREMISES-OFFICE-PREMISES PRIMARILY OCCUPIED BY EMPLOYEES OF THE INSURED-INCLUDING PRODUCTS AND/OR COMPLETED OPERATIONS-NOT FOR PROFIT | 61225 | A)6,000. | | 93.213 | $ | $ 750.00 MP |
| WAREHOUSES-PRIVATE-INCLUDING PRODUCTS AND/ OR COMPLETED OPERATIONS-NOT FOR PROFIT | 68707 | A)1,644. | | 30.877 | | INCLUDED |
| ADDITIONAL INSURED | | T)1 | | 50.00 | | 50.00 |

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

**TOTAL ADVANCE PREMIUM** $ 800.00

## FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

011-1061 (8-94)

COMPANY

CutePDF - www.fsina.com

Case 1:00-cv-00011   Document 13   Filed in TXSD on 01/08/2001   Page 69 of 87

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES

## COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

    (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

    b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

    (2) The "bodily injury" or "property damage" occurs during the policy period.

    c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. Exclusions.

    This insurance does not apply to:

    a. Expected or Intended Injury

    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

    b. Contractual Liability

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in contract or agreement. This exclusion does not apply to liability for damages:

    (1) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

    (2) That the insured would have in the absence of the contract or agreement.

    c. Liquor Liability

    "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

    (1) Causing or contributing to the intoxication of any person;

    (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

    This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

Copyright, Insurance Services Office, Inc., 1992

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

   (a) Employment by the insured; or

   (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

   (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

   (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

   (i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

   (ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

Copyright, Insurance Services Office, Inc., 1992    CG 00 01 10 93

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. Damage to Property

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

—

Copyright, Insurance Services Office, Inc., 1992

n. Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions.

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

      Copyright, Insurance Services Office, Inc., 1992      CG 00 01 10 93

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement.

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions.

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

Copyright, Insurance Services Office, Inc., 1992

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

a. Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

(1) "Bodily injury" or "personal injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees" or, if you are a partnership or joint venture, by any partner or member.

b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

Copyright, Insurance Services Office, Inc., 1992

CG 00 01 10 93

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy.

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit.

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Copyright, Insurance Services Office, Inc., 1992

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

Copyright, Insurance Services Office, Inc., 1992

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit.**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations.**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

Copyright, Insurance Services Office, Inc., 1992

(b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

(2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   Copyright, Insurance Services Office, Inc., 1992   CG 00 01 10 93

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

   (1) When all of the work called for in your contract has been completed.

   (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

   (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

17. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

18. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1992

CG 00 01 10 93

 **ESSEX INSURANCE COMPANY**

# MANDATORY ENDORSEMENT

* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CA 8694 | 03/13/98 | BURNELL MARINE & SUPPLY, INC. HC 70 BOX 58 |

### THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY.

### COMBINATION ENDORSEMENT M/E-001
COVERAGE, TERMS AND CONDITIONS IN THIS POLICY ARE CHANGED BY THE FOLLOWING:

1. **NEW ENTITIES:**
   This insurance does not apply to Part 4 of "Who Is An Insured" (Section II), Commercial General Liability Coverage Form.

2. **MEDICAL PAYMENTS:**
   This insurance does not apply to Coverage C. "Medical Payments" (Section I), Commercial General Liability Coverage Form.

3. **CONTRACTUAL LIABILITY AMENDMENT:**
   Wherever Contractual Liability is addressed in this policy, the following applies:
   This Insurance does not apply to any claim, suit, cost or expense arising out of "bodily Injury," "personal injury," "property damage" or damages of any type assumed under any "Insured Contract" resulting from the sole negligence of the indemnitee.

4. **LIQUOR LIABILITY EXCLUSION AMENDED:**
   Liquor Liability under 2. c. Exclusions, Commercial General Liability Coverage Form, Section I - Coverage, is replaced by the following and applies throughout this policy:
   This insurance does not apply to any claim, suit, cost or expense arising out of
   (1)  causing or contributing to the intoxication of any person and/or
   (2)  furnishing alcoholic beverages to any one under legal drinking age or under the influence of alcohol and/or
   (3)  any statute, ordinance or regulation relating to sales, gift, distribution or use of alcoholic beverage and/or
   (4)  any act or omission by any Insured, any employee of any Insured, patrons, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol. This exclusion applies to the entire policy, and where there is no coverage there is no duty to defend.

5. **EMPLOYER'S LIABILITY EXCLUSION AMENDED:**
   Employer's Liability under 2. e. Exclusions, Commercial General Liability Coverage Form, Section I. - Coverage, is replaced by the following and applies throughout this policy:
   This Insurance does not apply to any claim, suit, cost or expense arising out of "bodily Injury" to
   (1)  any employee of the Named Insured arising out of and in the course of employment by any Insured, or while performing duties related to the conduct of the Insured's business, or
   (2)  the spouse, child, parent, brother, sister or relative of that employee as a consequence of (1).
   This exclusion applies whether an Insured may be liable as an employer or in any other capacity, and/or to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any "Insured Contract."
   Wherever the word employee appears above, it shall also mean any member, associate, leased worker, temporary worker of, or any person or persons loaned to or volunteering services to you. This exclusion applies to the entire policy, and where there is no coverage there is no duty to defend.

M/E-001  (4/95)

6.    "AUTO" EXCLUSION AMENDED:
With respect to any "auto" 2g. Exclusions, Commercial General Liability Coverage Form, Section I - Coverages, the first paragraph is replaced by the following, and applies throughout this policy: This insurance does not apply to any claim, suit, cost or expense arising out of, caused by or contributed to by the ownership, nonownership, maintenance, use or entrustment to others of any "auto." Use includes operation and "loading and unloading." This exclusion applies to the entire policy and where there is no coverage, there is no duty to defend.

7.    EXCLUSIONS
Where there is no coverage under this policy, there is no duty to defend. This insurance does not apply to any claim, suit, cost or expense arising out of:

A.    POLLUTION:
(1)    "Bodily injury," "personal injury," "property damage" or any other type injury or expense;
(2)    Damages for the devaluation of property or for the taking, use or acquisition or interference with the rights of others in or on property or air space;
(3)    Any demand, order, governmental direction or request or any private party or citizen action that any Insured or any others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants, including any fines and/or penalties;
(4)    Any litigation or administrative procedure in which any Insured or others may be involved as a party; As a result of actual, alleged or threatened discharge, dispersal, release or escape of pollutants, or placement of pollutants, into or upon land, the atmosphere, or any water course or body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not. Pollutants means any solid, liquid, gaseous, thermal, acoustic, electric, magnetic, electromagnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, chemicals or materials, and waste. Waste includes, in addition to materials to be disposed of, materials to be recycled, reconditioned or reclaimed. All liability and expense arising out of or related to any form of pollution, caused intentionally or otherwise, and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any Insured or any other person or entity is excluded.

B.    ASBESTOS, LEAD, OR SILICA DUST:
(1)    Inhalation, ingestion, physical exposure to, absorption or actual or alleged presence of asbestos, silica dust, or lead, in any form, or toxic substances from same, and including but not limited to goods, products or structures containing same, and/or
(2)    the existence of asbestos, silica dust or lead, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same, and/or
(3)    any supervision, instructions, recommendations, requests, warnings or advice given or which should have been given in regard to asbestos, silica dust and/or lead, and/or
(4)    any costs, including but not limited to, abatement, mitigation, removal or disposal of asbestos, silica dust, lead, paint containing lead, plumbing solder, pipes and fixtures, soil or anything containing asbestos, silica dust or lead, in any form, and/or
(5)    any obligation to share damages with or repay anyone else who must pay damages in connection with the above.

C.    PUNITIVE OR EXEMPLARY DAMAGE:
Punitive or Exemplary Damages whether arising out of the acts of any Insured, any employee of any Insured or any other person.

D.    ASSAULT AND/OR BATTERY:
Assault and/or Battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any Insured, Insured's employees, patrons or any other person.

E.    HIRING AND/OR SUPERVISION:
Charges or allegations of negligent hiring, training, placement or supervision.

M/E-001 (4/95)

F. **EMPLOYMENT RELATED PRACTICES:**
   (1) refusal to employ or termination of employment, and/or
   (2) discrimination, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation or other employment-related practices, policies, acts or omissions, and/or
   (3) any type of consequential injury as a result of (1) and/or (2).

G. **ERRORS, OMISSIONS, ACTS, PROFESSIONAL LIABILITY, MALPRACTICE:**
   Any type error, omission, act, rendering of or failure to render any type professional service, unless specifically endorsed onto this policy.

H. **ATHLETIC PARTICIPANTS:**
   "Bodily injury" or "personal injury" to any person while practicing for or participating in any event or function of a sporting or athletic nature.

I. **DISCRIMINATION:**
   Any and all causes of alleged or actual discrimination.

J. **CROSS SUITS:**
   Or caused by any Named Insured covered by this policy initiating causes of action or allegations against any other Insured covered by this policy.

K. **INDEPENDENT CONTRACTORS/SUBCONTRACTORS - CONDITIONAL:**
   (1) "Bodily injury," "personal injury" or "property damage" caused by acts of independent Contractors/subcontractors contracted by you or on your behalf unless you obtain Certificates of Insurance from them providing evidence of like coverage and limits as provided by this policy;
   (2) Nor does this insurance apply to "bodily injury," "personal injury" or "property damage" sustained by any independent contractor/subcontractor, or any employee, leased worker, temporary or volunteer help of any independent contractor/subcontractor, unless the Named Insured is on site, directly supervising the work of the independent contractor/subcontractor at the time of injury or damage, and the Named Insured's actions, inactions or omissions are the direct cause of the injury or damage, or (b) the injury or damage, is directly caused by an employee of a Named Insured.

8. **ADDITIONAL CONDITION, LESSORS RISK ONLY:**
   If this policy includes a Lessors Risk Only classification on the supplemental declarations, that premises is written and priced on the basis that your tenant carries liability insurance to protect you as well as himself. You must have a lease requiring any <u>commercial</u> tenant(s) to carry Commercial General Liability insurance, name you as an additional insured on their policy and furnish you with a Certificate of Insurance. Parking Lot(s) or other land or premises owned by you and <u>leased</u> to tenant(s) must be included in such tenant(s) insurance. Failure to comply with this condition does not void coverage under your policy for this/these premises, however, the Limits of Liability will be reduced and apply as follows:

<u>Sublimit of Liability</u>

Each occurrence limit: $50,000 Combined Single Limit
Aggregate limit: $50,000 Combined Single Limit

The sublimit of liability shown above is the most we will pay for all damages <u>including</u> investigation and defense because of injury arising out of any one "occurrence." The aggregate limit stated in this endorsement is the most we will pay for all claims, including investigation and defense, under this policy. If our limits are tendered or exhausted under this sublimit, we will not defend or continue to defend in any suit.

M/E-001 (4/95)



**ESSEX INSURANCE COMPANY**

## ADDITIONAL INSURED ENDORSEMENT

\*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| \*ATTACHED TO AND FORMING PART OF POLICY NO. | \*EFFECTIVE DATE OF ENDORSEMENT | \*ISSUED TO |
|---|---|---|
| 3CA 8694 | 03/13/98 | BURNELL MARINE & SUPPLY, INC. HC 70 BOX 58 |

**THIS ENDORSEMENT CHANGES THE POLICY. READ IT CAREFULLY.**

SECTION II - WHO IS AN INSURED of the Commercial General Liability Form is amended to include:

Person or Entity:
PORT OF BROWNSVILLE
BROWNSVILLE NAVIGATION DISTRICT
1000 FOUST ROAD
BROWNSVILLE, TX. 78521

as an additional insured under this policy, but only as respects negligent acts or omissions of the Named Insured and only for occurrences, claims or coverage not otherwise excluded in the policy.

It is further agreed that where no coverage shall apply herein for the Named Insured, no coverage nor defense shall be afforded to the above identified additional insured.

Moreover, it is agreed that no coverage shall be afforded to the above identified additional insured for any bodily injury, personal injury, or property damage to any employee of the Named Insured or to any obligation of the additional insured to indemnify another because of damages arising out of such injury.

Additional Premium: _____

_____  /  _____

AUTHORIZED REPRESENTATIVE         DATE

M/E-009 (3/95)                    **COMPANY**



**MARKEL**

ESSEX INSURANCE COMPANY

# DEDUCTIBLE ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.**

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| \*ATTACHED TO AND FORMING PART OF POLICY NO. | \*EFFECTIVE DATE OF ENDORSEMENT | \*ISSUED TO |
|---|---|---|
| 3CA 8694 | 03/13/98 | BURNELL MARINE & SUPPLY, INC. HC 70 BOX 58 |

## SCHEDULE

| Coverage | Amount and Basis of Deductible |
|---|---|
| If provided by this policy: Bodily Injury, Property Damage, Professional or Personal and Advertising Injury Liability | $ 500.00    Per Claim |
| Exception: _____ | $    Per Claim |

1. Our obligation under Bodily Injury Liability, Property Damage Liability, Professional Liability, Personal and/or Advertising Injury Liability, or any other coverage under this policy, to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above. The deductible amount stated above shall be applicable to each claim and will include loss payments, adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

2. The deductible amount stated above applies under the coverages respectively to all damages sustained by one person, or organization, as the result of any one occurrence.

3. The terms of this insurance, including those with respect to:
   (a)   Our right and duty to defend any "suits" seeking those damages; and
   (b)   Your duties in the event of an "occurrence," claim, or suit apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

AUTHORIZED REPRESENTATIVE                    DATE

M/E-048 (6/96)                    COMPANY

 **MARKEL** **ESSEX INSURANCE COMPANY**

# PRODUCTS/COMPLETED OPERATIONS HAZARD ENDORSEMENT - EXCLUSION

\* *Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| \*ATTACHED TO AND FORMING PART OF POLICY NO. | \*EFFECTIVE DATE OF ENDORSEMENT | \*ISSUED TO |
|---|---|---|
| 3CA 8694 | 03/13/98 | BURNELL MARINE & SUPPLY, INC.<br>HC 70 BOX 58 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

We do not cover claims, loss, cost or expense for "bodily injury", "property damage", "personal injury" or "advertising injury" included with the "products/completed operations hazard".

AUTHORIZED REPRESENTATIVE                    DATE



# ESSEX INSURANCE COMPANY

## ENDORSEMENT

### 01

The following spaces preceded by an asterick (*) need not be completed if this endorsement and the policy have same inception date.

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CA 8694 | 03-13-98 | BURNELL MARINE & SUPPLY, INC. |

IN CONSIDERATION OF THE PREMIUM ALREADY CHARGED IT IS HEREBY AGREED THAT FORM 011-1056(9/93) IS AMENDED TO SHOW FORM 011-1061(8/94) IS ATTACHED.

IT IS ALSO AGREED THAT FORM CG2116(11/85) IS ADDED TO THIS POLICY.

ALL OTHER TERMS REMAIN THE SAME.

03-13-98/99
05-29-98/DT



Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

RAMSGATE MANAGING INSURANCE
SAN ANTONIO, TX

ENDORSEMENT #1

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

AUTHORIZED REPRESENTATIVE